241 A.2d 823.

PERRY'S HEATING SERVICE *et al. vs.* WILLIAM CASHMAN.

MAY 15, 1968.

PRESENT: Roberts, C. J., Paolino, Joslin and Kelleher, JJ.

KELLEHER, J. This is an employer's petition to review a preliminary agreement which awarded its employee compensation benefits for total incapacity as the result of an injury he received in January, 1965. It alleged in the petition that such incapacity had ceased and the employee was able to return to light selected work. The employee has appealed to this court from a decree of the workmen's compensation commission affirming a decree of the trial commissioner which granted the petition and ordered payment for partial incapacity but denied employee's claim for total compensation benefits under the second proviso of G. L. 1956, §28-33-18,[1] because of his failure to make a bona fide effort to obtain work.

The record shows that at the time of his injury employee was receiving a weekly salary of $67. At the time of the filing of this petition, he was receiving $40 a week in compensation benefits. Three separate hearings were conducted by the trial commissioner. At the first hearing on January 27, 1967, Dr. Thomas C. McOsker, a neurosurgeon, testified in behalf of the employer. He stated that although

---

[1]The pertinent portion of this statute reads as follows:

"* * * provided, further, however, that where a partially incapacitated employee has made a bona fide attempt without success to obtain suitable work he is able to perform and the employer is unable to offer the employee suitable work he is able to perform or is unable to present evidence that such suitable work is available elsewhere, then said employee shall receive as weekly compensation the amount payable for total incapacity."

the employee was experiencing some discomfort from his back injury,[2] he could do work which did not involve constant bending, twisting, standing on his feet or long driving.

The employee's personal physician, Dr. Richard Bertini, appeared at the second hearing on March 13, 1967. While he described his patient as being totally disabled for all practical purposes, he expressly qualified this remark by saying that employee could do extremely light work in which he was given a great deal of latitude as to when he could sit, stand, lie down or, if he wished, not come into work for certain periods of time. The employee also testified at this hearing. He told the commissioner that he was 59 years old. He admitted that he was receiving, in addition to his compensation, total incapacity benefits under the provisions of the social security act. When asked if he would be willing to work at the risk of losing these benefits, employee replied, "If I make a living, I'd be glad to do it." He claimed he could not work because of the constant pain he experienced. In cross-examination he admitted that he drives an automobile, that on occasions he transports his wife to her work, that he drove to and from his doctor's office and that he generally did the shopping for some miscellaneous every-day commodities such as bread and milk.

An interlocutory decree was entered on March 23, 1967, which declared employee was partially disabled and ordered him to return to the commission at a subsequent date in order to give him an opportunity to seek suitable employment and to render a report on his efforts to obtain a job. It was disclosed, however, that the employee did not receive notice of the entry of this decree until the following Mon-

[2]The preliminary agreement originally described the nature and location of the injury as "acute lumbo sacral strain." At the hearing before the trial commissioner it was amended to read "Acute lumbo sacral strain; ruptured intervertebral disk." The amendment was made after both physicians testified that employee had received a ruptured disk in addition to the strain at the time he was injured.

day, March 27. The third hearing was held on April 25, 1967. The employee appeared and described his job-seeking efforts during the past month. It consisted of about 15 visits to different prospective employers and three trips to the local offices of the department of employment security. The employee stated that he drove to the department's offices on one of these occasions but he was unable to find a parking space for his automobile so he returned home and remained there the balance of the day. Of the 25 working days which expired between the notice of the entry of the interlocutory decree and the day of the third hearing, five were Saturdays. The employee conceded that he did not look for work on Saturdays. On numerous other days, he told the commissioner he was unable to leave home because it was stormy. When the commissioner specifically remembered that one of the days described by employee as being stormy was in fact "beautiful," the employee then explained his description of a stormy day. He used this expression to indicate days when his back was bothering him. Such a condition heralded the approach of a storm and on such days he remained home. The employee's attempts to obtain employment during the week prior to the hearing amounted to two visits on the same day to two different employers. He spent a half hour at each location and returned to his home.

Although the employee has filed numerous reasons of appeal, almost without exception they take issue with the findings of fact made regarding his incapacity and his failure to make a bona fide effort to obtain a job. We point out here as we have so many times before that the workmen's compensation act enjoins this court from weighing the evidence to determine whether the preponderance is otherwise than has been found by the workmen's compensation commission. If there is any competent evidence upon which

the disputed findings can rest, the commission's decree must be affirmed.

In our opinion, the commission was justified in relying on Dr. McOsker's testimony. This evidence provided a competent legal basis for its determination that employee's incapacity had diminished from total to partial. Although we believe that employee's many contentions of error by the commission when it determined his partial incapacity are without substance, we consider it appropriate to comment on his argument that Dr. McOsker's testimony should be completely disregarded because he failed to describe the specific work employee could perform. This court has never enunciated any such doctrine. To adopt employee's contention would be the substantial equivalent of asking the physician to function as an employment counselor. Such a concept is manifestly alien to the role which doctors must play in workmen's compensation proceedings. It is sufficient if a medical expert states that the physical condition of a worker has reached the point where he can once again join the labor force and attempt to recapture his former earning capacity. If the physician's concern for the well-being of the employee requires that certain limitations be set as to the type of activity which can be undertaken by an employee, he may set forth such conditions as he deems proper. He need not, however, point to a specific job or activity which comes within the ability of an employee before his medical expertise can be given weight.

Once an employee's disability has been determined to be partial rather than total, if he wishes to receive total compensation benefits for his partial incapacity, it then becomes his burden to show that he has made a bona fide attempt to obtain work which was within the limits of his ability to perform. *Laganiere v. Bonte Spinning Co.*, 103 R. I. 191, 236 A.2d 256. In *Masurel Mills, Inc. v. Dubois*, 100 R. I. 48, 210 A.2d 864, we said that the legislature in using the term "bona fide" required a partially incapacitated em-

ployee to make a *conscientious* effort to obtain suitable work. It is our opinion that in order for a job-seeking effort to be designated as conscientious, it must in all respects be honest, sincere and diligent. See *Armour & Co.* v. *Greco,* 95 R. I. 149, 185 A.2d 98. In the instant cause, the trial commissioner described employee's efforts as "meager." He stated they in no way could be called bona fide. The full commission in making its independent appraisal of the evidence concurred in the trial commissioner's finding. It further concluded that the employee had decided to accept his present retired status with its attendant financial benefits.

Here, as in *Cranston Print Works Co.* v. *Picano,* 94 R. I. 69, 177 A.2d 922, the question of an employee's good faith with regard to his attempts to obtain suitable work is an issue of fact and depends upon the weight placed on his testimony by the trial commissioner in the first instance and the full commission on appeal. Our review of the record shows that there is competent evidence which supports the negative finding made relative to the employee's good faith.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, Thomas D. Gidley,* of counsel, for appellees.

*Cohen & Chaika, William Young Chaika,* of counsel, for appellant.