SOPRANO CONSTRUCTION CO., INC.

v.

**Benjamin M. MAIA.**

**No. 79–135–Appeal.**

Supreme Court of Rhode Island.

July 7, 1981.

Charles H. Anderson, Providence, for appellee.

Lovett & Linder, Ltd., Raul L. Lovett, Lauren E. Jones, Providence, for appellant.

OPINION

KELLEHER, Justice.

This is a workers' compensation case in which the employee appeals from a decree of the appellate division of the Workers' Compensation Commission affirming a trial commissioner's finding that the employee was no longer totally incapacitated. On April 6, 1976, the employee, a laborer, incurred a job-related injury, to wit, a ruptured disc and a "complete foot drop."[1] Subsequently, on June 15, 1977, he was awarded benefits for total incapacity, which benefits included dependency benefits for his minor son. On August 30, 1978, the employer filed a petition to review the 1977 decree, alleging that its employee was "able to perform light selected work." Hereinafter we shall refer to the employee as "Maia" and to his employer as "Soprano."

At the hearing on the review petition, Soprano presented as its only witness Dr. David M. Barry, a neurosurgeon who at that time had been treating Maia's back and his right foot "off and on" for over two years. On July 31, 1978, Dr. Barry had examined Maia, and this examination revealed that the foot drop had improved significantly but that Maia's back spasms in his lower-lumbar sacral area continued. The spasm, Dr. Barry said, was an objective symptom that was consistent with Maia's complaints about pain in his leg and back. The surgeon explained that Maia's range of back motion had increased, but he estimated that his patient still had a 15-percent limitation in his back movement. In light of these findings, the surgeon concluded that Maia "could probably do some light work."

On cross-examination, Maia's attorney interrogated Dr. Barry about what he meant by "some light work." The latter's initial response was, "Well, I don't believe he can do any significant lifting whatsoever, and he would have to be in some sort of a position where there was a limited amount

---

1. "Foot drop" consists of the loss of ability to turn the foot inward or to extend or raise the toes because of a paralysis of certain muscles of the foot and ankle. Thus, a foot can "fall" to the extent that one's toes may drag on the ground while he or she is walking. *Engelking v. Carlson*, 80 P.2d 96, 97 (Cal.App.1938); Stedman's Medical Dictionary 543 (4th ed. 1976).

of bending and probably not sustained in one position for a prolonged period of time." Doctor Barry also explained that he would not want Maia to take a job for which he would have to be constantly in a standing position and that it would be better if he could find a job allowing him to "get up and walk around periodically." Since Maia's ability to bend and twist was limited, the witness also pointed out that a job that required repeated bending "could be bad." Doctor Barry was also dubious about whether Maia could be employed in a job that required extensive walking. He also added to the growing list of job limitations any work in which Maia had to climb steps or ladders because "[h]e can't stand on his toes."

In attempting to summarize the surgeon's testimony, Maia's attorney asked the following questions:

"Q. Just so I perfectly understand you, you say he can return to some type of light work, but you preferred this be a job where there is no extensive sitting or standing, no extensive walking, no extensive climbing steps?

"A. I think so, it would have to be suitable type of work.

"Q. Could you think of a job * * * to fit that description?

"A. Fortunately that is not my problem, no."

The trial commissioner, in granting Soprano's petition to review, observed that "[i]t was Dr. Barry's unequivocal position" that Maia "had the ability to perform light work." The appellate commission was also unequivocal in affirming the trial commissioner's factual findings.

▬ As we begin our consideration of Maia's appeal, we would first note that one who asserts the affirmative in a workers' compensation petition has as his burden to establish by competent legal evidence the essential elements that entitle him to relief under the Workers' Compensation Act. *Leviton Manufacturing Co. v. Lillibridge,* R.I., 387 A.2d 1034 (1978). Thus, the employer who brings a petition to reduce the compensation payments to an injured employee bears the burden of proof on that issue. *Moss Construction Co. v. Boiani,* 84 R.I. 486, 125 A.2d 147 (1956). Here, by bringing its petition, Soprano was required to prove that Maia had recovered from his injuries to the extent that he could return to work without endangering his physical well-being. *See Leviton Manufacturing Co. v. Lillibridge,* R.I., 387 A.2d 1034, 1037 (1978).

The record clearly indicates that the appellate commission, in embracing the factual findings made by the trial commissioner, overlooked the obvious fact that Dr. Barry's "unequivocal" testimony was far from being unequivocal. Although the surgeon did testify in direct examination that he believed Maia could probably do some light work, in cross-examination he made clear that his patient's return to the labor market was subject to a variety of restrictions. According to Dr. Barry, Maia could return to the labor force if he obtained a job in which he was free to "get up and walk around periodically." If Maia was offered a sit-down job, his employer was obligated to afford Maia time to stand up, and conversely if Maia was hired for a stand-up position, he had to have the opportunity to sit down. Maia, who had previously earned a living carrying pipes and hauling cement, could not accept a job that required "significant lifting," "repetitive bending," climbing stairs or ladders, or extensive walking. With commendable candor Dr. Barry pointed out that people who have had back problems will begin to ache if they are "confined in position" for any length of time.

▬ In *Perry's Heating Service v. Cashman,* 104 R.I. 75, 79, 241 A.2d 823, 826 (1968), this court pointed out that the commission could rely on medical testimony to determine if an employee's incapacity has been reduced from total to partial and that the physician need not act as an employment counselor and point out the specific job that the employee could perform. Later, in *Suffoletta v. Ricci Drain Laying Co.,* 113 R.I. 114, 117, 319 A.2d 19, 21 (1974), we

stressed that a doctor who expresses an opinion relative to the ability of a totally incapacitated employee to return to the labor market without incurring any undue risk must speak in terms of probability rather than possibility. We continue to endorse the sentiments expressed in both cases.

█ Here, Dr. Barry unquestionably spoke in terms of probability, but his testimony concerning the many restrictions he attached to Maia's return to the job market completely nullified his earlier positive prediction concerning Maia's ability to do light, selected work. Consequently Soprano failed to sustain its burden of introducing competent evidence which would indicate that Maia's re-entry into the labor force posed no hazard to his health.

█ Maia's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Workers' Compensation Commission for further proceedings.[2]

---

2. Under the present statutory scheme for workers' compensation, a partially disabled employee who has not returned to gainful employment as a result of work-connected injuries receives the same amount of weekly compensation as is payable for total incapacity. *Podborski v. William H. Haskell Mfg. Co.*, 109 R.I. 1, 279 A.2d 914 (1971). However, a totally incapacitated worker is entitled to a weekly allowance for each dependent, whereas a partially incapacitated employee receives no allowance for dependents. Thus, the actual financial dispute in the case at bar relates solely to the additional $6 weekly payment representing a dependent's allowance for Maia's minor son. *See* G.L.1956 (1979 Reenactment) § 28–33–17.