INGE R. TROTTA *vs.*

BROWN & SHARPE MANUFACTURING COMPANY.

JULY 31, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is an employee's petition to review a preliminary agreement for compensation under the workmen's compensation act, general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297. After a hearing before a single commissioner a decree was entered denying and dismissing the petition. The employee appealed therefrom to the full commission which, after hearing, entered a decree affirming the decree of the single commissioner. The case is before us on the employee's appeal from such decree.

The instant petition to review, which is based on an injury suffered by petitioner on May 6, 1953, was heard before a single commissioner of the workmen's compensation commission together with an original petition for compensation by this employee against the General Electric Co.— Wiring Device Division, which was based on an injury which allegedly occurred on February 28, 1956. On July 26, 1956 the single commissioner rendered a decision awarding compensation in the latter case and denying compensation in the instant case. From a decree of the full commission in each case affirming the decree of the single commissioner each party claimed an appeal to this court. The cases were argued together before us but since they involve different employers and different issues, we shall treat them separately.

The following pertinent facts appear in the record. The petitioner was originally injured on May 6, 1953 while employed by the instant respondent as a quality control inspector. The date of the first incapacity arising from this injury was May 28, 1953, from which time she was out of work under a preliminary agreement which stated that she had sustained a low back strain and was to receive compensation for duration of total incapacity. On October 5, 1953 a compensation suspension agreement and receipt was signed by the parties, stating that petitioner had returned to work at her regular wages on September 21, 1953, and that she had received compensation at the rate of $28 a week from May 28, 1953 to September 18, 1953.

On December 7, 1953 she again became incapacitated as a result of the May 6, 1953 injury. A supplementary preliminary agreement was executed providing that she was to receive compensation at the rate of $28 a week from December 7, 1953 for "duration of total 2nd incapacity * * *." On August 3, 1954 a second compensation suspension agreement and receipt was signed in which she stated she was able to return to work on August 2, 1954 and that she had received $28 a week from December 7, 1953 to August 1, 1954. On the back of this agreement petitioner signed a statement stating that she was able to return to her regular work at her regular wages on August 2, 1954, as far as her injury was concerned, but that she did not do so because she was laid off for lack of work, and that she understood compensation ceased as of August 2, 1954.

At the hearing she had testified that after August 2, 1954 she sought work elsewhere and finally obtained employment as a jewelry worker at Speidel Corporation, where she worked from September 13 to December 17, 1954 when she was laid off. Thereafter she sought other employment and called Brown & Sharpe Manufacturing Company to try to get the same type of work she formerly did there. She testified that after December 17, 1954 she was out of work,

except for one week in July 1955, until September 27, 1955 when she obtained employment at the General Electric Co. —Wiring Device Division.

On September 28, 1955 petitioner started to work there and except for a leave of absence of four weeks from December 30, 1955 to January 30, 1956, which she requested for personal reasons, she worked there steadily from January 30 to February 29, 1956 kicking a foot press. She testified that on the evening of February 28, 1956, soon after she commenced kicking the foot press, she became conscious of a severe pain in her back and leg. On February 29 she reported her condition to the nurse and was put on benchwork. However, she was not able to go to work the next day and went to Dr. Donald F. Larkin, who had previously treated her. She has not worked since February 29, 1956 and has remained under Dr. Larkin's care.

In the instant proceeding, she is claiming compensation for partial incapacity for the period from August 2, 1954 to February 28, 1956, except for the four weeks' leave of absence which she voluntarily took in 1956, and except for those weeks when she earned wages equal to or in excess of her average weekly earnings while employed at Brown & Sharpe Manufacturing Company. In addition she is seeking maximum partial compensation for those weeks when she did no work at all, since she claims she had looked for the kind of work she could do during those weeks of unemployment.

The petitioner contends in substance that her earning capacity was decreased after August 2, 1954 as a result of a recurrence and aggravation of her original low back injury on May 6, 1953. In support of her claim she testified that she signed the final suspension agreement because she felt that the doctor had released her for light work and she did not think she was entitled to any further compensation since she was not totally disabled. She testified further that when she signed the agreement she was able to do light work

but not lifting or continuous bending or to stand up constantly. She also stated that after August 2, 1954 she looked for light work.

The evidence shows that petitioner had not seen a doctor from August 2, 1954 to February 29, 1956. She testified that during that period she had a slight discomfort in her back, but not to the extent that she would not have been able to work. A statement signed by her on March 29, 1956 was introduced in evidence in which she stated that from August 1954 until February 28, 1956 her back felt fine and she had no pain or discomfort.

Doctor Larkin testified that from his examination of petitioner on March 1, 1956, it was his opinion that she was totally disabled, and that this condition was apparently due to the type of work she had been doing for the month previously as described by her. His report of June 14, 1956, which was introduced in evidence, stated: "In view of the fact that she gives no other history of injury since recovering from her low back strain sustained in 1953," he felt that the work at General Electric Co. aggravated the pre-existing condition and brought on her present complaints.

After the hearing the single commissioner rendered a decision in which he held that petitioner had failed to sustain the burden of proving that she was incapacitated by reason of the injury which was the subject of the preliminary agreement between the parties. In support of his decision he cited *Mondillo* v. *Ward Baking Co.*, 73 R. I. 473, 479. Thereafter a decree was entered which contained the following findings of fact: "1. That between August 2, 1954, and February 28, 1956, the petitioner was not incapacitated by reason of any effects of an injury which she sustained on May 6, 1953, during her employment with the respondent. 2. That since February 28, 1956, the petitioner has not been incapacitated by reason of any effects of the injury sustained by her on May 6, 1953, while in the employ of the respondent." In accordance with these findings the em-

ployee's petition to review her earning capacity was denied and dismissed and the findings of fact and the orders contained in the decree were subsequently affirmed by the full commission.

In her reasons of appeal petitioner in substance states that the decree is against the law and the evidence and the weight thereof and is wholly unsupported by the evidence. She also specifically contends that the commission misconceived the evidence in that, although she could do the work that she had been doing, it was clearly lighter work than that which she had been doing at the time of her injury at Brown & Sharpe Manufacturing Company because with her back condition she could only do such light work satisfactorily.

It is well established in workmen's compensation cases that findings of fact by a trial commissioner which are affirmed by a final decree of the full commission are conclusive if there is sufficient evidence either directly or by reasonable inference to support the decision. *Brown & Sharpe Mfg. Co.* v. *Lavoie,* 83 R. I. 335, 116 A. 2d 181; *Langanke* v. *Bradford Dyeing Association,* 83 R. I. 470, 119 A. 2d 728; *Laptew* v. *Moore Fabrics, Inc.,* 84 R. I. 280, 123 A. 2d 398. It is likewise well settled that the burden of proving any injuries and decrease in earning capacity therefrom rests upon the party alleging the same. *Enos* v. *Abrasive Machine Tool Co.,* 84 R. I. 454; *Wareham* v. *United States Rubber Co.,* 73 R. I. 207; *Hagopian* v. *American Woolen Co.,* 80 R. I. 468. It has been generally held that a petitioner claiming compensation must prove an unbroken causal connection between the accident relied on and the incapacity for work upon which the claim for compensation is based. *Mondillo* v. *Ward Baking Co., supra.*

Assuming that there is evidence that the petitioner was suffering severe pain or discomfort at the time she signed the final settlement receipt, it does not necessarily follow that

she was incapacitated from performing her regular work at her regular wages. In our opinion there was evidence to support the finding that petitioner had not proved any decreased earning capacity since the date of the signing of the final settlement receipt, which incapacity was causally attributable to the original accident and injury. Since no claim of fraud has been made by petitioner, such finding of fact is conclusive under our workmen's compensation act and cannot be disturbed by this court.

Since the finding of fact is final that petitioner was not incapacitated after August 2, 1954 by reason of the May 6, 1953 injury, there is no merit to petitioner's further contention that she is entitled to compensation merely because she earned less or nothing at all after she signed the final settlement receipt. It is well settled that compensation is paid only for incapacity resulting in loss of earnings. *Thornlimb* v. *D. F. Farrell & Sons, Inc.,* 85 R. I. 157, 128 A. 2d 333.

As long as an employee is incapacitated from a compensable injury, he is entitled under our act to compensation, partial or total as the case may be. But where it is found that he is not incapacitated, our law does not provide compensation merely because the employee cannot find work or because he earns less than he did at the time of the injury. *Panzarella* v. *United States Rubber Co.,* 81 R. I. 149, 158.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*John Quattrocchi, Jr.,* for petitioner.

*Worrell & Hodge, Eldridge H. Henning, Jr.,* for respondent.