STAR ENTERPRISES

v.

Dennis DELBARONE.

No. 98–383–M.P.

Supreme Court of Rhode Island.

Feb. 14, 2000.

Fred L. Mason, Jr., Providence, for plaintiff.

Lewis J. Paras, Warwick, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

1. General Laws 1956 § 28–33–18(b) provides in pertinent part:

"[W]here an employee's condition has reached maximum medical improvement and the incapacity for work resulting from the injury is partial * * * the employer shall pay the injured employee a weekly compensation equal to seventy percent (70%) of the weekly compensation rate as set forth in subsection (a)."

Prior to trial before the WCC, both parties stipulated that employer was entitled to reduce Dennis DelBarone's benefits to 70 percent of his weekly compensation; therefore, any issue about the propriety of that reduction is not now before this Court.

## OPINION

WEISBERGER, Chief Justice.

This case came before the Court on the employer's petition for certiorari seeking review of a decree of the Appellate Division of the Workers' Compensation Court (Appellate Division), which upheld a Workers' Compensation Court (WCC) trial judge's denial of a request to set an earnings capacity. We issued the writ. For the reasons stated below, we affirm the decree of the Appellate Division and deny the employer's petition for certiorari.

This matter was presented to the WCC as an employer's petition to review in which Star Enterprises (employer), sought a reduction of benefits and requested an establishment of an earnings capacity in accordance with G.L.1956 §§ 28–33–18(b)[1] and (c)(2). The case proceeded to trial following the entry of a pretrial order in which the trial judge directed that the employee's benefits were to be reduced to 70 percent of the employee's weekly benefits being paid, and in which the trial judge declined to set an earnings capacity. At the time of trial, the parties stipulated that the employee, Dennis DelBarone (employee or DelBarone), was partially incapacitated, that he had reached a point of maximum medical improvement, and that employer was entitled to reduce his benefits to 70 percent of the weekly compensation rate as provided in the pretrial order. The only issue at trial was whether employer was entitled to a further reduction of benefits under the provisions of § 28–33–18(c).[2] The trial judge denied employ-

2. Section 28–33–18(c) provides in pertinent part:

"(1) Earnings capacity determined from degree of functional impairment pursuant to § 28–29–2(3) shall be determined as a percentage of the whole person based on the most recent addition of the American Medical Association Guides To The Value Of Permanent Impairment. Earnings capacity shall be calculated from the percentage of impairment as follows:

* * *

(ii) For impairment of twenty-five percent (25%) or less, but greater than five percent (5%), earnings capacity shall be calculated so as to extinguish one hundred

er's request, finding that employer failed to sustain its burden of proof because it failed to produce evidence suggesting any correlation between DelBarone's earning capacity and his functional impairment. The employer appealed, and the Appellate Division affirmed the decree of the trial judge. We issued the writ to review the decree of the Appellate Division.

The facts in this case are not in dispute. On October 16, 1995, DelBarone injured his neck while loading a gasoline truck owned by his employer, Star Enterprises. At the time of his accident, DelBarone had been a truck operator for twenty-five years. He was employed for eleven of those years by employer as a gasoline truck operator. His job duties included driving an eighteen-wheel truck, and loading and unloading the truck, which entailed pulling and positioning hoses that weighed approximately eighty pounds.

DelBarone was completely incapacitated because of his injury as of October 17, 1995. In March 1996, his treating physician advised DelBarone that he could return to work on a light–duty basis, and that he was to avoid pulling heavy hoses and repetitive flexion and extension of his neck. During trial, the deposition testimony of two physicians, Dr. Melvyn Gelch, DelBarone's treating physician, and Dr. Steven L. Blazar, an orthopedic surgeon consulted by employer, was admitted into evidence. Both agreed that, because of his injury, DelBarone would not be able to return to his former job, but that he would be capable of light duty work provided that he modify his activity. DelBarone was informed by employer, however, that no light-duty jobs were available.

The issue before the trial judge was whether a further reduction of benefits should be made on DelBarone's workers' compensation pursuant to § 28–33–18(c)

percent (100%) less the percent of impairment of weekly benefits.
* * *
(2) An earnings capacity adjustment under this section shall be applicable only

based on a finding of a percentage of total person impairment. The trial judge ultimately found that DelBarone has a total person impairment of 7 percent; therefore, employer argued that DelBarone's disability compensation should automatically be reduced to 7 percent of his total weekly compensation benefits. The trial judge, however, rejected employer's argument.

The trial judge noted that, pursuant to G.L.1956 § 28–29–2(3)(i), an earnings capacity can be established "based on evidence of ability to earn, including, but not limited to, a determination of the degree of functional impairment and/or disability * * *." The trial judge then found that, based on previous decisions of the Appellate Division, the expression "and/or" is equivocal and neither positively conjunctive nor positively disjunctive. Accordingly, the trial judge held that the court could use its discretion in applying both the functional impairment rating and the employee's actual disability in determining whether to set an earnings capacity. The trial judge held that "[i]f the functional impairment does not relate to the employee's actual disability, the court is not required to set an earnings capacity based upon the functional impairment rating." Because no evidence was introduced in respect to employee's ability to earn, the trial judge was unable to find any relationship between DelBarone's functional impairment and his actual disability. Therefore, the trial judge denied employer's request for a further reduction of DelBarone's benefits.

The employer appealed the decision, and the matter came before the Appellate Division for a de novo review of the case. The Appellate Division affirmed. The Appellate Division held:

"[We have] held that in those situations where the evidence does not suggest some reasonable relationship between

when the employee's condition has reached maximum medical improvement under § 28–29–2(3)(ii) and benefits are subject to adjustment pursuant to subsection (b) of this section."

the employee's actual physical impairment and the ability to earn, the Court is not required to set an earnings capacity based on the degree of functional impairment. In the absence of some realistic proof that the employee's functional impairment is roughly equatable with the employee's residual ability to earn, the Court will not set an earnings capacity based upon a purely medical measurement."

Accordingly, the Appellate Division agreed with the findings of the trial judge—because the record did not present the trial judge with any evidence on which to base a comparison between the employee's physical impairment and his earnings capacity, the trial judge was warranted in denying the petition.

The employer now raises two arguments before this Court. First, employer argues that the Appellate Division erred in its interpretation of § 28–33–18(c). The employer argues that § 28–33–18(c)(2) clearly mandates that an earnings capacity for a 7 percent impairment "shall be calculated" so as to reduce benefits to that percentage of the weekly benefits being paid. The employer argues that the provision is mandatory, not discretionary, as the trial judge determined, because the legislature used the word "shall" as opposed to the word "may." Next, employer argues that the Appellate Division erred in denying its request for a further reduction because the burden is on the employee to demonstrate a relationship between the employee's functional impairment rating and the employee's disability. The employer argues that it was entitled to a further reduction in benefits because DelBarone did not introduce any evidence about the degree of his disability as it relates to his employability, nor did he introduce any evidence to show that he was actively seeking employment.

## I

### Standard of Review

This petition presents questions of statutory construction. "We review the Appellate Division's decision de novo, pursuant to [G.L.1956] § 28–35–30, for any error of law or equity." *Rison v. Air Filter Systems, Inc.,* 707 A.2d 675, 678 (R.I.1998). "Our review on certiorari 'is limited to examining the record to determine if an error of law has been committed.' *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I.1994). We do not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *City of Providence v. S & J 351, Inc.,* 693 A.2d 665, 667 (R.I.1997) (per curiam); *see also Gregson v. Packings & Insulations Corp.,* 708 A.2d 533, 535 (R.I. 1998).

## II

### Section 28–33–18(c)

The employer's first argument on appeal involves an interpretation of § 28–33–18(c). Specifically, employer argues that § 28–33–18(c) is a mandatory provision that automatically must be applied to establish an earnings capacity when an employee reaches maximum medical improvement and when he or she receives a functional impairment rating. For the reasons stated below, employer's position cannot be accepted.

"Earnings capacity" is defined in § 28–29–2(3)(i) as

"the weekly straight time earnings which an employee could receive if the employee accepted an actual offer of suitable alternative employment. *Earnings capacity can also be established by the court based on evidence of ability to earn, including, but not limited to, a determination of the degree of functional impairment and/or disability, that an employee is capable of employment.*" (Emphasis added.)

Section 28–33–18(c) further provides for the court to establish an earnings capacity based upon a determination of an employee's functional impairment. When the court uses a degree of functional impairment to set an earnings capacity, § 28–33–18(c) directs the court to reduce the benefits according to the percentage of functional impairment. For example, for an employee receiving an impairment rating of 5 percent or less, earnings capacity shall be calculated so as to extinguish 100 percent of the employee's benefits. *See* § 28–33–18(c)(1)(i).

 Nothing in § 28–33–18(c), however, requires that a trial judge use only a functional impairment rating to establish an earnings capacity. Rather, § 28–29–2(3)(i) lists several ways by which an earnings capacity may be set. "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996)). Giving the words and phrases of § 28–29–2(3)(i) their plain and ordinary meaning, it is clear that an earnings capacity may be set in many different ways. One way of establishing an earnings capacity is by determining "the degree of functional impairment *and/or* disability." Section 28–29–2(3)(i). (Emphasis added.)

Based on previous decisions of the Appellate Division, both the trial judge and the Appellate Division determined that the phrase "and/or" is neither positively conjunctive nor positively disjunctive, and that use of the phrase accords a court the discretion to apply one term or the other, or both. In so determining, neither the Appellate Division nor the trial judge misapplied the law. Indeed, the American Heritage Dictionary of the English Language 49 (1981) defines the phrase "and/or" as

"[u]sed to indicate that either *and* or *or* may be used to connect words, phrases, or clauses depending upon what meaning is intended. * * * *And/or* is principally appropriate to legal or commercial usage. It is most useful in setting forth three distinct and exclusive possibilities: either of two things considered separately or the two in combination (that is, one or the other or both)."

 Accordingly, it is clear that a court may use a functional impairment rating or an employee's actual disability, or both, in establishing an earnings capacity. Because the Workers' Compensation Act is designed to pay an employee compensation for the loss of earnings capacity flowing from an injury, *see Builders Iron Works, Inc. v. Murphy,* 104 R.I. 637, 639, 247 A.2d 839, 841 (1968), it is appropriate to give the trial judge the discretion to decline to set an earnings capacity based on functional impairment when the evidence presented does not suggest some reasonable relationship between the employee's actual physical impairment and his ability to earn. Accordingly, employer's first argument of error is rejected.

### III

### Burden of Proof

The employer's next argument is that the Appellate Division erred in denying its request for a further reduction of benefits because the burden is on the employee to demonstrate a relationship between the functional impairment rating and the actual disability. The employer argues that DelBarone failed to meet this burden because he did not present any evidence about the degree of his disability as it relates to his employability, nor did he introduce any evidence to show that he was actively seeking employment. In support of this argument, employer points to that portion of § 28–29–2(3)(i) which provides that

"[t]he court may, in its discretion, take into consideration the performance of

the employee's duty to actively seek employment in scheduling the implementation of the reduction. The employer need not identify particular employment before the court can direct an earnings capacity adjustment."

This argument must be rejected. Initially, it is important to note that employer proceeded with its petition to review before the trial judge on a purely abstract basis. The trial judge responded accordingly. The only evidence introduced tended to show DelBarone's inability to raise his arms. No evidence was introduced about DelBarone's level of education, or about the availability of jobs that he would be able to perform. Therefore, the trial judge was unable to find a correspondence between DelBarone's functional impairment and his actual disability.

 Moreover,

"one who asserts the affirmative in a workers' compensation petition has as his burden to establish by competent legal evidence the essential elements that entitle him to relief under the Workers' Compensation Act. *Leviton Manufacturing Co. v. Lillibridge,* [120] R.I. [283], 387 A.2d 1034 (1978). Thus, the employer who brings a petition to reduce the compensation payments to an injured employee bears the burden of proof on that issue." *Soprano Construction Co. v. Maia,* 431 A.2d 1223, 1225 (R.I.1981).

Therefore, were this petition before the court on other than an abstract basis, the employer would have the burden of showing a correspondence between the employee's functional impairment and his or her actual disability, measured by his ability to earn, in the event that the court exercises its discretion to review the employee's disability and determines whether the setting of an earnings capacity is warranted. Section 28–29–2(3)(i) merely absolves an employer from identifying "particular employment" before the court can direct an earnings capacity adjustment.

Furthermore, in so defending such a petition, an employee may also have a burden of going forward with evidence tending to show that he or she has actively sought employment. However, since the petition was before the trial judge on an abstract basis, the trial judge did not err in declining to establish an earnings capacity based solely on a medical functional impairment.

## IV

### Conclusion

For the foregoing reasons, we affirm the decree of the Appellate Division and deny the employer's petition for certiorari. The writ previously issued is quashed. The papers in the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.