**BECHTEL CORPORATION**

v.

**Leonard PONTE.**

**No. 99–188–M.P.**

Supreme Court of Rhode Island.

Dec. 4, 2000.

Michael D. Lynch, Providence, for Plaintiff.

Michael J. Farley, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## O P I N I O N

WEISBERGER, Chief Justice.

This case came before the Court on the employer's petition for certiorari seeking review of a final decree of the Appellate Division (Appellate Division) of the Workers' Compensation Court (WCC), which reversed a trial judge's grant of a request to set an earnings capacity. We issued the writ. For the reasons stated below, we affirm the decree of the Appellate Division and deny the employer's petition for certiorari.

This case was presented to the WCC as an employer's petition to review in which the employer, Bechtel Corporation (employer), sought to reduce benefits and establish an earnings capacity pursuant to G.L.1956 § 28–33–18(c).[1] Following the entry of a pretrial order directing the employee's compensation to be reduced to $23.23 per week based upon a finding of a 7 percent whole person impairment, the case proceeded to trial.[2]

The trial judge granted the employer's request to set an earnings capacity, finding that the 7 percent impairment fairly and accurately depicted the employee's disability. The employee appealed, and the Appellate Division reversed the decree of the trial judge. We issued the writ to review the decree of the Appellate Division.

The facts in this case are undisputed. On September 30, 1994, the employee, Leonard Ponte (Ponte or employee), injured his neck as a result of the repetitive use of tools and equipment while working as a boilermaker for his employer, Bechtel Corporation (employer). At the time of his injury, Ponte was fifty-three and one-half years old. A memorandum of agreement, which was entered into evidence, established that the employee became disabled on December 10, 1994. He made an unsuccessful attempt to return with another employer as a boilermaker in the late winter 1995. On April 14, 1995, Ponte was provided benefits for partial incapacity.

1. General Laws 1956 § 28–33–18(c) provides in pertinent part:

   "(1) Earnings capacity determined from degree of functional impairment pursuant to § 28–29–2(3) shall be determined as a percentage of the whole person based on the most recent addition of the American Medical Association Guides To The Value Of Permanent Impairment. Earnings capacity shall be calculated from the percentage of impairment as follows:

   * * *

   (ii) For impairment of twenty-five percent (25%) or less, but greater than five percent (5%), earnings capacity shall be calculated so as to extinguish one hundred percent (100%) less the percent of impairment of weekly benefits."

2. At the time of trial, there also existed an unappealed pretrial order that was entered on December 19, 1995, approximately two months prior to trial, in which the WCC found that the employee had reached maximum medical improvement and reduced his weekly compensation by 30 percent pursuant to § 28–33–18(b).

He has not worked in any capacity since that time. It is undisputed that he is unable to return to his former position and remains permanently partially disabled. Ponte testified that he has not looked for work since that time, nor has he participated in any vocational rehabilitation program. He also testified that he has an eleventh-grade education.

The deposition and medical report of Dr. John Parziale was admitted into evidence during trial. The doctor opined that the employee was unable to return to work as a boilermaker, but he was capable of working in a light duty capacity that did not require the lifting of more than 30 pounds, prolonged neck extension, or repetitive pushing or pulling activities with the right arm or hand. The doctor also found that Ponte had reached maximum medical improvement and had a whole person impairment rating of 7 percent based upon the Fourth Edition of the *AMA Guide of the Evaluation of Permanent Impairment.*

Two rehabilitation specialists were qualified as experts, and their testimony was admitted at trial. The employer's expert testified that Ponte was employable. She had contacted twelve organizations by phone and identified at least six that were accepting applications for jobs that she understood to be within Ponte's restrictions. The employee's expert testified that he met with Ponte on one occasion, and that, based upon his age, education, and background, he would be able to perform only services of a limited quantity or quality and, thus, no reasonable market for his services existed.

The sole issue before the trial judge was whether to reduce further Ponte's workers' compensation benefits pursuant to § 28–33–18(c). The trial judge found that Ponte had a 7 percent whole person impairment, and reduced his disability compensation to $23.23 per week. In reaching her conclusion, she relied on the deposition testimony of Dr. Parziale and the testimony of the rehabilitation specialist for the employer. The trial judge ultimately concluded that Ponte could perform light duty work and that such work existed in the community. In rejecting the testimony of the employee's rehabilitation specialist, she noted that he had not performed a labor market survey to determine the availability of suitable jobs, and that he had admitted that Ponte was able to perform certain select jobs. She also noted in her decision that Ponte appeared healthy and tan. Based on this evidence, she held that the 7 percent impairment rating equated with Ponte's actual disability.

The employee appealed the trial judge's decision. The Appellate Division (by a two to one vote) reversed on the grounds that the evidence in the record was insufficient to support the trial judge's finding that the employee had an earnings capacity equal to 93 percent of his pre-injury spendable wages. The Appellate Division held, consistent with its prior case law, that

"in order to set an earning capacity for a partially incapacitated worker based upon that individual's percent of functional impairment, it must be shown that the degree of functional impairment realistically correlates with the employee's true ability to earn. Additionally, the injured employee's degree of functional impairment is but one element to be considered when attempting to establish a true earning capacity."

The Appellate Division concluded that, based upon the evidence in the record, it was clear error for the trial judge to find that Ponte had an earnings capacity equal to his physical whole body impairment.

The employer essentially raises two arguments on appeal. First, employer argues that the Appellate Division exceeded its authority in reversing the trial judge's findings and in conducting a *de novo* review. Second, employer argues that the Appellate Division erred in its interpretation of G.L.1956 § 28–29–2(3)(i), and in requiring that expert testimony explicitly correlate functional impairment with the ability to earn. The employer argues that

based upon this Court's recent decision in *Star Enterprises v. DelBarone*, 746 A.2d 692 (R.I.2000), the trial judge acted within her discretion in establishing an earnings capacity based on Ponte's 7 percent functional impairment.

On certiorari, this Court is limited to examining the record for any errors of law. *See* G.L.1956 § 28–35–30. We do not weigh the evidence, but rather, we review the record to "determine whether legally competent evidence supports the findings of the tribunal whose decision is under review, in this case, the Appellate Division." *Forte v. Fernando Originals, Ltd.*, 667 A.2d 780, 782 (R.I.1995). Where such evidence exists, the Appellate Division's findings will be binding upon this Court, absent fraud. *See id.*

We address, first, the authority of the Appellate Division to conduct a *de novo* review in the case at bar. The employer argues that sufficient evidence existed to support the trial judge's finding that Ponte's 7 percent impairment related to his disability. In support of its argument, the employer points to the labor market survey, which showed that there was employment that Ponte could perform, and the medical testimony, which established Ponte's 7 percent impairment.

Pursuant to § 28–35–28(b), a trial judge's findings on factual matters are final unless "clearly erroneous." We have held that the Appellate Division is limited to the record made at the trial before the trial judge, and it may not undertake a *de novo* review without first making a finding that the trial judge was clearly wrong. *See Lavoie v. Victor Electric*, 732 A.2d 52, 54 (R.I.1999).

On appeal, the Appellate Division found clear error on the part of the trial judge, and noted this finding on the record. The Appellate Division stated that it was "clear error for the trial judge to have supplemented the insufficient evidence in the record, by finding that based upon her subjective assessment of the employee's appearance, age, physique and shade of skin, he had an earnings capacity equal to his physical whole body impairment." Given the finding that the trial judge had committed clear error, the Appellate Division was free to review the evidence *de novo* and make its own factual findings and conclusions on the issue of whether Ponte's 7 percent impairment related to his ability to earn.

It is well established that, absent fraud, the findings of fact made by the Appellate Division will not be disturbed by this Court if there is competent evidence to support those findings. *See Lombardo v. Atkinson–Kiewit*, 746 A.2d 679, 687–88 (R.I.2000); *Trotta v. Brown & Sharpe Mfg. Co.*, 86 R.I. 247, 252, 134 A.2d 173, 176 (1957). In the case at bar, the testimony adduced at trial indicated that Ponte's average weekly wage was $823.44, with a spendable base wage of $647.67, before his injury. At trial, the judge reduced Ponte's weekly compensation to $23.23. However, the Appellate Division noted that the general rule for paying weekly compensation is contained within § 28–33–18(a), which provides that "the employer shall pay the injured employee a weekly compensation equal to seventy-five percent (75%) of the difference between his or her spendable average weekly base wages, earnings, or salary before the injury * * * and his or her spendable weekly wages, earnings, salary, or *earnings capacity* thereafter * * *." (Emphasis added.) In the absence of credible, non-speculative evidence sufficient to establish an earnings capacity post injury, this formula could not be applied.

The only evidence that was introduced in respect to Ponte's ability to earn was the testimony of the employer's expert, who stated that he was employable in jobs that would pay between $180 and $240 per week. However, even the employer's expert did not correlate the 7 percent disability with Ponte's ability to earn. Moreover, the Appellate Division found that there was no guarantee that any of the listed

employers actually would hire Ponte. Thus, the Appellate Division found that these figures were pure speculation. Given the substantial lack of evidence in respect to a correlation between Ponte's 7 percent impairment and his earnings capacity, we affirm the Appellate Division's findings on this issue. Accordingly, we hold that the Appellate Division acted within its authority in concluding that the trial judge was clearly wrong in reducing Ponte's weekly compensation by 93 percent. Thus, the Appellate Division correctly concluded that Ponte's 7 percent impairment did not reasonably establish his earnings capacity.

We now address employer's statutory interpretation argument. The employer argues that the Appellate Division erred in requiring that the functional impairment rating correlate with the employee's disability as a condition to establishing an earnings capacity. The employer also asserts that expert testimony should not have been required because such correlation is an ultimate finding of fact left to the discretion of the trial judge. In support of its argument, employer directs this Court to the clear and unambiguous language of § 28–29–2(3)(i), which states in pertinent part:

> "Earnings capacity can also be established by the court based on *evidence of ability to earn, including, but not limited to, a determination of the degree of functional impairment and/or disability,* that an employee is capable of employment. The court may, in its discretion, take into consideration the performance of the employee's duty to actively seek employment in scheduling the implementation of the reduction. The employer need not identify particular employment before the court can direct an earnings capacity adjustment." (Emphasis added.)

The employer asserts that in view of this clear statutory mandate as well as this Court's decision in *Star Enterprises v. DelBarone,* 746 A.2d 692 (R.I.2000), the trial judge acted within the statutory parameters when she utilized the functional impairment rating to establish Ponte's earnings capacity.

In matters of statutory construction, we review the decision of the Appellate Division *de novo. See Star Enterprises,* 746 A.2d at 695. The plain language of § 28–29–2(3)(i) states that an earnings capacity may be established through "evidence of ability to earn, *including, but not limited to, a determination of the degree of functional impairment* and/or disability." (Emphasis added.) The statute does not equate functional impairment with an earnings capacity. Rather, the statute permits functional impairment and/or disability to serve as evidence of the ability to earn. We recently interpreted § 28–29–2(3)(i) in *Star Enterprises.* In that case, we held that it was within the trial judge's discretion to use an employee's functional impairment rating or actual disability, or both, in establishing an earnings capacity pursuant to § 28–29–2(3)(i). *See Star Enterprises,* 746 A.2d. at 696. There, the employee was deemed permanently disabled for his job as a truck operator and only capable of light duty work. *See id.* at 694. No evidence was introduced with respect to his ability to earn, and the trial judge was unable to find any relationship between his functional impairment and his earnings capacity. *See id.* Therefore, the trial judge declined to establish an earnings capacity based solely on the employee's functional impairment. *See id.*

Although we did not address, specifically, the question of whether functional impairment must reasonably relate to ability to earn, we did recognize that a trial judge had the discretion to "decline to set an earnings capacity based on functional impairment when the evidence presented does not suggest some reasonable relationship between the employee's actual physical impairment and his ability to earn." *Star Enterprises,* 746 A.2d at 696. In this case, the Appellate Division correctly concluded that the evidence was insufficient to

establish that the employee's earnings capacity reasonably related to his 7 percent impairment. Surely, the Legislature did not intend for an employee, such as Ponte, to suffer such a drastic reduction in weekly compensation based solely on a numerical medical impairment.

The employer also argues that Ponte's failure actively to seek employment warranted the drastic reduction in his benefits. Section 28–29–2(3)(i) permits the trial judge, in his or her discretion, to consider an employee's efforts in seeking employment when deciding whether to implement the reduction. However, the Legislature did not intend this section to be punitive. "The [Workers'] Compensation Act is humane legislation designed to afford a modicum of economic shelter to one who has sustained an industrial injury." *Lambert v. Stanley Bostitch, Inc.*, 723 A.2d 777, 782 (R.I.1999) (quoting *Geigy Chemical Corp. v. Zuckerman*, 106 R.I. 534, 541, 261 A.2d 844, 848–49 (1970)). Ponte's lack of efforts to seek employment may well have been a factor in establishing an earnings capacity; however, this element alone formed no basis for reducing his pre-injury earnings of $823.44 to a meager $23.23 per week.

Based on our opinion in *Star Enterprises*, and the plain language of § 28–29–2(3)(i), we conclude that the Appellate Division did not err in requiring some reasonable correlation between an employee's ability to earn and his or her functional impairment when establishing an earnings capacity pursuant to § 28–29–2(3)(i). In light of this opinion, it is not necessary for the Court to reach the constitutional issues raised by Ponte's counsel.

For the foregoing reasons, we affirm the decree of the Appellate Division and deny the employer's petition for certiorari. The writ previously issued is quashed. The papers in the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.

Justice FLANDERS did not attend oral argument, but participated on the basis of the briefs.

FLANDERS, Justice, dissenting.

I respectfully disagree with the Appellate Division panel's majority decision in this case and, therefore, with the majority of this Court that upholds that decision. The panel's majority concluded that the trial judge clearly erred by taking into account her subjective assessment of the employee's appearance, age, physique, and tanned skin in establishing his diminished earnings capacity at a level equal to the percentage of his functional whole-body impairment. But I believe this assessment was consistent with the traditional function of the trial judge: to observe the appearance and demeanor of witnesses and parties that appear before him or her and to take that information into account (when relevant) in reaching conclusions about the matters at issue in the case. All that the trial judge did here was to conclude that the employee's appearance, age, physique, performance of chores outside the home, and tanned skin were consistent with a conclusion that his work-related injury had resulted in only a slightly diminished capacity of his ability to earn and that he indeed appeared to be as capable of securing gainful employment as the employer's rehabilitation expert had suggested. In short, I believe that the trial judge was entitled to conclude that this employee's 7 percent degree of functional impairment realistically correlated with the employee's true diminishment of his ability to earn and that the trial justice was justified in reaching this conclusion based upon the evidence in the record. Thus, I cannot agree with the panel majority's conclusion that she was clearly wrong in reaching this result. In this case, some evidence indicated that the employee's slight functional impairment equated with only a slightly diminished earning capacity.

Although a trial justice has the discretion to "decline to set an earnings capacity based on functional impairment when the

evidence presented does not suggest some reasonable relationship between the employee's actual physical impairment and his ability to earn," *Star Enterprises v. DelBarone*, 746 A.2d 692, 696 (R.I.2000) the opposite conclusion is also true. Indeed, G.L.1956 § 28–29–2(3)(i) expressly provides that "[e]arnings capacity can also be established by the court based on \* \* \* a determination of the degree of [the employee's] functional impairment and/or disability." If earnings capacity is determined by this method, then G.L.1956 § 28–33–18(c) authorizes the trial judge to calculate the employee's earnings capacity based *solely* upon the percentage of the employee's functional impairment. As the dissenting judge to the Appellate Division's panel decision pointed out, no expert testimony is required before the trial judge can use this statutory formula to calculate the employee's earnings capacity. Nevertheless, in this case the evidence presented did suggest a reasonable relationship between this employee's relatively slight physical impairment and his negligible diminished capacity to earn. The employer's expert testified that the employee was capable of securing gainful employment. If an employee, such as Ponte, suffers a work-related injury that results in only a *de minimis* functional impairment—one that suggests his ability to earn will be affected only marginally, if at all—then, according to §§ 28–29–2(3)(i) and 28–33–18(c) it is not inequitable for such an employee to suffer a drastic reduction in weekly compensation. This is especially so when, as here, the employee has failed even to seek, much less to obtain, available work—notwithstanding his or her evident employability. The applicable workers' compensation statutes (§§ 28–29–2(3)(i) and 28–33–18(c)) endorse this result by allowing the trial judge to use a statutory formula to calculate diminished earnings capacity based upon the degree of an employee's functional impairment. If independent evidence were needed to establish or corroborate the employee's diminished earnings capacity, then this statutory formula would be superfluous.

In this case, the record is absolutely clear that we have an employee who would be able to find gainful employment if only he had looked for it. For unexplained reasons, he failed to do so. Thus, given the undisputed evidence of his relatively slight physical impairment and of his failure to seek available employment, I agree with the trial judge that the evidence called for a drastic cut in his benefits. Our state workers' compensation law supports such a reduction when, as here, the marginal degree of this employee's functional impairment seems to correlate with his true, but only slight, earnings impairment.

Accordingly, I would reverse the decision of the Appellate Division panel and uphold the trial judge. Alternatively, I would remand this for further fact-finding concerning whether there is any additional correlation between this employee's functional impairment and his ability to earn, though I do not believe the applicable statutes require such a connection before calculating the employee's diminished earnings capacity.