DECISION
Before the Court are consolidated cases involving Delmyra Kennels, Inc. (Delmyra), which is located in the Town of Exeter (Town). The first case is a declaratory judgment action filed by the Town against the owners of Delmyra, Scott and Ruth Gordon (the Gordons). In that action, the Town requested this Court to find the Gordons in violation of Article II, §§ 2.4.1, 6-91, 6-111, 6-122 et seq. of the Town of Exeter Code of Ordinances. The second case concerns the November 16, 1999 decision of the Town of Exeter Zoning Board, in its capacity as the Board of Appeals (the Board), denying the appeal of the Gordons concerning a Zoning Official's Cease and Desist Order. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I. Facts/Travel
The Gordons are the owners of a parcel of property designated as Plat 38, Block 7, Lots 4 and 9, located at 191 Ten Rod Road, Exeter, Rhode Island. The parcel is approximately 15 acres, and the Gordons have operated Delmyra Kennels thereon since 1976. The property is located in a rural zoning district identified as a RU-4 zone. The Zoning Ordinance sets forth the uses permitted in a RU-4 zone. Those uses include: "single family structures and home occupation, raising of animals or fowl by a resident of the premises, accessory uses and farming." Town of Exeter Zoning Ordinance § 2.4.1 (1-8). As to the farming category, Use Category 8 states the following: "Farming; nurseries; forestry activities, which include cutting, buying and selling of firewood; excluding wood processing which is listed as a special use. Buying, selling, breeding and boarding of animals, but not to including the raising of pigs primarily for the consumption and disposal of garbage." Zoning Ordinance § 2.4.1 (8) (emphasis added).
 A. The May 7, 1999 Cease and Desist Order/Notice of Violation
Delmyra is a full service commercial dog and cat kennel. The activities carried on there include boarding, breeding and grooming of dogs, as well as indoor and outdoor dog obedience and other types of training. In 1999, Mr. Gordon cleared approximately two acres of the property and intended to use the cleared land to exercise the dogs and hold outdoor group training sessions and evaluations. In order to accomplish the training sessions, the Gordons used portable jumps, tunnels, A-frames for the dogs to go over, tires to jump through, and a teeter totter. On May 7, 1999, the Town of Exeter Zoning Inspector, Paul Picerne, issued a "Cease and Desist Order/Notice of Violation" prohibiting the Gordons from "constructing agility rings" for the purpose of outside training of dogs. It was the Inspector's belief that the outdoor dog training, exercising, and evaluation were not an integral part of a boarding and breeding operation, and such use therefore exceeded the scope of permitted uses in the RU-4, Use Category 8 zone.
On May 20, 1999, the Gordons timely appealed the Order pursuant to § 1.7.B of the Town's Zoning Ordinance on the grounds that conducting exercising, training and evaluating sessions for dogs are permitted uses. A hearing was held by the Board on August 12, 1999. At that hearing, testimony was given by the Gordons, and their witnesses, Dr. Charles Schor, an expert veterinarian, and George Bernard, who has over 35 year experience in kennels and is the former President of the Federal Trade Association for Kennels.
Mr. Gordon testified that a special use permit is not required and the activities at Delmyra, which led to the May 7, 1999 Desist Order, are permitted by right under Use Category 8 or, in the alternative, as an accessory use as training, exercise and evaluating animals are activities incidental and essential to the "buying, selling, breeding and boarding" of animals. Dr. Schor testified that reputable breeders of animals must evaluate the animals in order to best determine which animals to breed. Dr. Schor also testified that training is an integral part of boarding and breeding animals and that "in today's use of the term Kennel, it would include all these things. It would definitely include training, because that use is integral to any Kennel." (Tr. at 34-35.) Mr. Bernard testified that over 80% of kennels nationally have training along with boarding and breeding, and those that do not offer training are primarily due to lack of space.
Zoning Inspector Picerne testified in opposition of the Gordons' appeal. It was his opinion that section 2.4.1.46 governed the activities that the Gordons were conducting at Delmyra. Use Category 46 is defined as "[s]wimming areas, country clubs, golf courses, skiing, and commercial horseback riding facilities. Private and public fishing and hunting areas, sports clubs (excluding shooting ranges). Private or commercial campgrounds or recreation, including sports clubs." Mr. Picerne also testified that he did not believe the activities were an accessory use. He felt "[i]t's not a boarding or breeding activity. It's more of an outdoor activity, a hunting club or sports club." (Tr. at p. 87.)
In its November 16, 1999 decision, the Board denied the Gordons' appeal of the May 7, 1999 Cease and Desist Order. That decision was recorded on November 22, 1999 in the Exeter Records of Land Evidence. The Board held that a kennel use does not include the training of animals. It further held that the proposed training activities at Delmyra are "too wide open to include as an accessory use without more specifics." (Town of Exeter Zoning Board of Review November 16, 1999 Decision at 5.)
 B. The October 2, 1999 Cease and Desist Order/Notice of Violation
The declaratory judgment action, filed with this Court on October 21, 1999, is in response to a second Cease and Desist Order/Notice of Violation issued to the Gordons on October 2, 1999 to prohibit dog shows from being held on the property. This second order was issued due to the Gordons' holding an American Kennel Club sanctioned fall match for the New England St. Bernard Club, Inc. on September 26, 1999. This order was issued due to the Zoning Inspector's belief that such activity is prohibited by § 2.4.1 of the Zoning Ordinance as interpreted by the Zoning Board in the decision of the Gordons' appeal of the first Desist Order. This second Order was issued after the hearing but prior to the filing of the Board's decision of the Gordons' appeal. The Gordons did not appeal this second Cease and Desist Order, and continued to hold similar events on the property.
The Town filed this action seeking a determination that the activities being carried on at Delmyra are in violation of the Town of Exeter Ordinances, as well as injunctive relief to prohibit current and future continuance of the alleged violations. It is the Gordons' belief that these events are not outside training activities of the sort prohibited by the Board's decision. Instead they contend that these are breeding activities, which are an integral part of Delmyra's breeding operation. Based upon this belief, they continued to hold similar types of activities on the property for the purposes of breeding specific breed of dogs.
 II. Standard of Review
This court possesses appellate review jurisdiction of a zoning board of review decision pursuant to G.L. § 45-24-69(D):
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"In reviewing the action of a zoning board of review, the trial justice must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Toohey v. Kilday,415 A.2d 732, 735 (R.I. 1980) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979); Apostolou v. Genovesi, 120 R.I. 501, 504, 388 A.2d 821, 824-25(1978)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Apostolou, at 825. Moreover, this court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (citations omitted).
 III. The Gordons' Appeal of the November 16, 1999 Decision of the Town of Exeter Zoning Board, in Its Capacity as the Board of Appeals.
In its November 16, 1999 decision, the Board found that outdoor exercising, training and evaluating of dogs at a kennel, located in a RU-4 zoning district under Use Category 8 of the Zoning Ordinance, is not a permitted or accessory use. Specifically, the Board found that "[t]he Exeter Zoning Ordinance does not define kennel use, but the state laws do define it and [sic] makes no mention of training. The proposed training use is too wide open to include as an accessory use without more specifics." (11-16-99 Decision at 5.) Kennel is defined by the General Assembly as "a place or establishment other than a pound or animal shelter where animals not owned by the proprietor are sheltered, fed and watered in return for a fee." R.I. Gen. Laws 1956 § 4-19-2 (15). The decision of the Board failed to mention whether the relevant activities carried on by Delmyra, were permitted uses under Use Category 8 as breeding and boarding activities.
With respect to what permitted and accessory uses are allowed at Delmyra, it must first be determined exactly what is allowed in a Use Category 8 zone. As previously defined, Category 8 allows, among other things, the "buying, selling, breeding, and boarding of animals." Therefore, at issue is whether the outdoor training, exercising, and evaluation of dogs is a permitted or accessory use of the "buying, selling, breeding, and boarding of animals."
The term, "permitted use," is defined as "[a] right which is specifically authorized in a particular zoning district." R.I. Gen. Laws § 45-24-31 (52). An "accessory use," is defined as a "use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building. An accessory use may be restricted to the same lot as the principal use. An accessory use shall not be permitted without the principal use to which it is related." R.I. Gen. Laws § 45-24-31 (3).
It is well settled in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance. Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981). When the language of a statute, or in this case an ordinance, is clear and unambiguous, the court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. Sindelar v. Lequia, 750 A.2d 967
(R.I. 2000); Star Enterprises v. DelBarone, 746 A.2d 692 (R.I. 2000). In order to determine if the Board's decision constituted an abuse of discretion or was in violation of ordinance provision, the words and phrases "buying, selling, breeding, and boarding of animals" must be given their plain and ordinary meaning.
It is the Gordons' contention that there is no need for a special use permit because the use of the field at Delmyra for the outdoor training, exercising, and evaluating of animals is consistent with the permitted uses under Use Category 8. In support of this belief, they offered the expert testimony of Dr. Schor. He testified that "training is one of the aspects of breeding that evaluates, depending on what breed of dog you are trying to breed, that dog is truly the best representative of that breed, and that way, breeding and training are integral together." (Tr. p. 32.) The term, "breeding," is defined as "the raising of animals or plants, especially for the purpose of improving the stock." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 225 (2nd ed. 1983).
It is clear to this Court that the plain and ordinary meaning of the word breeding, as used in the ordinance, includes the training, exercising, and evaluation of the animals to be bred. In order to be successful as a breeder, Delmyra notes that it and other breeders must be allowed to conduct outdoor evaluations and training sessions with the animals that they wish to breed. Furthermore, breeder is defined in the Rhode Island General Laws. The Rhode Island General Laws states a "[b]reeder means a person engaged in the propagation of purebred dogs and/or cats for the purpose of improving and enhancing a breed recognized and registered by the American kennel club, American field stud book, or a registered cat breed association." R.I. Gen. Laws § 4-19-2 (8). It would seem impractical to prohibit the activities that would allow a breeder to `enhance' a recognized breed, by granting the relief sought. Delmyra can only `enhance' a breed by conducting outdoor training, exercising, and evaluation sessions on its property. Without same, the purpose of allowing a breeder to operate would be undermined, and the Ordinance that allows it would be void.
In addition to being a breeder, Delmyra also acts as a boarder of animals. As a boarder, Delmyra houses dogs and cats for an extended period of time, often while the pets' owners are away on vacations. The plain and ordinary meaning of a boarder would include the outdoor exercise of animals while they are housed at Delmyra. In support of this is the testimony of George Bernard. Mr. Bernard, a kennel operator for 35 years, testified that the kennel industry in the United States derived from training and kennel groups. In addition, he testified that over 80% of kennels nationally provide training along with boarding, and those that do not offer such training do not do so primarily due to lack of space.
The record reveals that the Board did not address the terms, "breeding and boarding." In doing so, the Board neglected to determine whether the subject activities were permitted uses under the Ordinance as breeding and boarding activities. These terms, when given their plain and ordinary meaning, include the outdoor training, exercise and evaluation of animals. As discussed above, the outdoor training of animals in an integral part of the breeding and boarding of animals. The activities complained of are of the nature that fall within the permitted use of a Use Category 8 Zone. Delmyra is conducting "breeding" activities by hosting sanctioned training, exercising and evaluating dogs and hosting American Kennel Club events. These events, as long as they are for the purposes of breeding particular breeds of animals, are permitted under Town of Exeter Zoning Ordinance Sec. 2-4-1 (8). Therefore, the activities carried on at Delmyra are permitted uses under the Ordinance, as long as they are for breeding and boarding purposes.
Accordingly, after a review of the entire record, this Court finds the findings, conclusions, and decision of the Board were clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. The Board acted in excess of its authority granted to it by statute and ordinance and was in violation of ordinance provisions. Therefore, the decision of the Board is reversed.
 IV. The Town of Exeter's Motion for Declaratory Judgment
Under the Uniform Declaratory Judgment Act, this Court "shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.I. Gen. Laws § 9-30-1. The purpose of this Act is "to facilitate the termination of controversies." Capital Properties, Inc. v. State, 749 A.2d 1069 (R.I. 1999) (citing Fireman's Fund Insurance Co. v. E.W. Burman, Inc., 120 R.I. 841, 845,391 A.2d 99, 101 (R.I. 1978)). The decision of a trial court to grant or deny relief under this Act is purely discretionary. Sullivan v. Chafee,703 A.2d 748 (R.I. 1997). However, the necessary predicate to the exercise of that discretion under the Act is the existence of an actual justifiable controversy. Id.; Providence Teachers Union v. Napolitano,690 A.2d 855 (R.I. 1997).
This Court has already determined in the zoning appeal that the outdoor training, exercise, and evaluation of animals is an integral part of "breeding and boarding" of animals, and is therefore a permitted use in a RU-04 Use Category 8 zone. Since the factual predicts for the declaratory judgment have not been litigated and are in dispute, the matter will be set for trial. This matter will be placed on the Control Calendar for March 14, 2002.
 Conclusion
After a review of the entire record, this Court finds that the substantial rights of the appellant were prejudiced because the findings, conclusions, and decision of the Board were clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. The Board acted in excess of its authority granted to it by statute and ordinance and was in violation of ordinance provisions. Accordingly, the decision of the Board is reversed.
Counsel shall submit the appropriate order for entry.