Maureen GALLAGHER

v.

NATIONAL GRID
USA/NARRAGANSETT ELECTRIC.

Dennis Gallagher

v.

National Grid USA/Narragansett
Electric.

Maureen Gallagher

v.

USGEN New England, Inc.

Dennis Gallagher

v.

USGEN New England, Inc.

Nos. 2011–111–M.P., 2011–113–M.P.

Supreme Court of Rhode Island.

June 5, 2012.

John M. Harnett, Esq., Providence, for Dennis & Maureen Gallagher.

George E. Furtado, Esq., Providence, for National Grid USA/Narragansett Electric.

Susan Pepin Fay, Esq., Providence, for USGEN New England, Inc.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

In 2004, Dennis Gallagher was diagnosed with malignant mesothelioma, an

"occupational disease,"[1] ultimately succumbing to the disease. A trial judge of the Workers' Compensation Court entered decrees holding USGEN New England, Inc. (USGEN) liable to pay benefits to Mr. Gallagher and to his wife, Maureen Gallagher, as Mr. Gallagher's "last employer" under G.L.1956 § 28–34–8.[2] The Appellate Division of the Workers' Compensation Court (Appellate Division) vacated those decrees and entered final decrees assessing liability against National Grid USA/Narragansett Electric (National Grid) instead. Mrs. Gallagher and National Grid each petitioned for a writ of certiorari to review the Appellate Division's final decrees. We issued both writs and consolidated the cases. For the reasons set forth in this opinion, we affirm the final decrees of the Appellate Division.

# I

## Facts and Procedural History

It is undisputed that Mr. Gallagher had a long history of asbestos exposure in the workplace. From 1965 to 1971, he worked as a welder for Electric Boat in the Town of Groton, Connecticut. Mr. Gallagher testified by deposition that the submarines in which he worked were "loaded" with asbestos and that "[workers] were always moving it, bringing it in, bringing it out to insulate piping." Mr. Gallagher stated that he worked "in the same area" where the pipes were being insulated with asbestos,

during which time the asbestos "g[ot] in the air." He further stated that he was exposed to "airborne" asbestos when he "worked in a closed-in submarine changing air filters that were loaded with asbestos." He also described using asbestos gloves and blankets at the workplace during this time.

From 1974[3] to 1984, Mr. Gallagher worked as a supervisor, welder, and planner for Electric Boat at Quonset Point in Rhode Island. During this employment, Mr. Gallagher testified, he worked with strip heater covers that "had asbestos covering on them." He described using asbestos gloves "to handle hot metal" and asbestos blankets "[t]o cover [him]self or to cover an area so [he] wouldn't catch it on fire or burn [him]self." Mr. Gallagher noted that the buildings at Quonset Point were insulated with asbestos and that "every so often, you would see stuff in the air."[4] He testified that while some of the areas where he worked were well-ventilated, others were not, and that most of the time, he did not use a ventilator.

In October 1984, Mr. Gallagher began working as a "[m]echanic technician welder" at the National Grid plant in the City of Providence. He testified that the plant contained asbestos in the form of "pipe covering insulation in the boilers," and he described how, at least once each year, asbestos would be stripped from the pipes

---

1. General Laws 1956 § 28–34–1(3) defines "[o]ccupational disease" as "a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment."

2. Section 28–34–8 provides that an employee suffering from an occupational disease shall recover compensation "from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted."

3. Mr. Gallagher held various jobs between 1971 and 1974, none of which exposed him to asbestos.

4. When Mr. Gallagher was asked how he could tell that the "stuff in the air" was asbestos, he explained: "If you're looking at a light and you see the fibers in the air, you know there's asbestos around. It's been worked on. You know that some of that is going to be asbestos. It's obvious. You get the dust particles."

and put into bags or mixed and reused. Mr. Gallagher testified that these "overhauls" were conducted in the same areas where he worked, and that he sometimes participated in them. He further testified that he "could see [the asbestos] floating in the air." He stated that he did not wear any protection from asbestos until the early 1990s.

In 1995, the National Grid plant was "repowered," and an outside company was hired to encapsulate or remove asbestos from the plant. Mr. Gallagher first testified that asbestos was "[p]robably" airborne that year; he then clarified: "I'm sure it was. It had to be. They contained it as best they could. But there was always something in the air." Mr. Gallagher stated that he sometimes worked in the areas where asbestos was being worked on, but that the company repowering the plant tented off the work areas and set up a ventilation system. He testified that "the whole station" was repowered, "whatever asbestos was there" was "capped off," and "everything else" was "stripped" and "recoated * * * with new insulation."

On September 1, 1998, after the National Grid plant was completely repowered, USGEN acquired the plant, and Mr. Gallagher continued to work there for USGEN. When asked whether he was exposed to asbestos from September 1, 1998, until April 2004, he stated: "There's still old parts in the plant. There might be some sitting around on beams and stuff that we do have to go into now and then. So I would say, yeah, there's a lot less, but there is still some." [5] During Mr. Gallagher's deposition, the following exchange occurred between him and counsel for National Grid:

"[Counsel:] And the boilers, are they still wrapped in asbestos?

"[Mr. Gallagher:] The boilers are still hanging there. They're sealed up as best they could. But I'm sure—as a matter of fact, I was—I can almost guarantee it, if I take you up there and go by some of those beams, the old fixtures, I bet you still find some [asbestos].

"[Counsel:] When you say they're hanging there, are they operational or not?

"[Mr. Gallagher:] No, no, they're not operational. But those boilers are hung from the top. And when they heat up, they go to the bottom. That's why I say hanging.

"[Counsel:] I'm sorry, maybe I misunderstood your answer. But are they still wrapped in asbestos?

"[Mr. Gallagher:] There's asbestos inside, yes.

"[Counsel:] Still in the area where you continue to work?

"[Mr. Gallagher:] Yeah, we work in those areas sometimes. But like I say, it's like a sealed containment. There's openings, but there's doors that are sealed. But inside there, there's still asbestos.

"[Counsel:] In other areas of the plant where you continue to work up until this year, are there other areas that, as far as you know, that contain asbestos products?

"[Mr. Gallagher:] The old areas, like I say, I put dollars to donuts that there's still asbestos in some areas. Not all. I know that they tried to get it all and contained most of it, but I wouldn't doubt that there's still some."

---

5. When asked whether asbestos was "worked at all and put into the air" during this time,

Mr. Gallagher answered, "I would say yeah."

Mr. Gallagher's last day of work was April 7, 2004, and he was diagnosed with malignant mesothelioma on April 14, 2004. John Pella, M.D., a pulmonary specialist who treated Mr. Gallagher, testified by deposition that "[m]alignant mesothelioma has a very strong association with asbestos dust exposure" and has an average latency period of thirty to thirty-five years. Based on this, Dr. Pella testified, Mr. Gallagher's earliest work experience with Electric Boat was the likely cause of his illness. Doctor Pella acknowledged the possibility of a shorter, twenty-year, latency period for mesothelioma, but he confirmed that, based upon current medical knowledge, any exposure between 1998 and 2004 could not have caused Mr. Gallagher's disease.

Mr. Gallagher filed petitions for benefits in Workers' Compensation Court against Electric Boat, National Grid, and US-GEN.[6] The trial judge entered pretrial orders denying the petitions against Electric Boat and National Grid and granting the petition against USGEN, finding US-GEN liable for benefits as the "last employer" under § 28–34–8.[7] Both Mr. Gallagher and USGEN timely claimed for a trial. After Mr. Gallagher's death on July 13, 2005, Mrs. Gallagher filed petitions for benefits, as his dependent, against the same employers.[8] The trial judge entered similar pretrial orders, and

claims for a trial again were filed. All petitions were thereafter consolidated.

A hearing was held on January 10, 2006, at which the petitioners,[9] in lieu of live testimony, submitted the depositions of Mr. Gallagher and Dr. Pella. Electric Boat also submitted the deposition of Michael Teiger, M.D.[10] At a subsequent hearing, all three employers submitted memoranda in support of their positions; the petitioners, however, opted not to do so.[11]

The trial judge issued a written decision on October 22, 2007. In his decision, the trial judge held USGEN liable for Mr. Gallagher's disease, stating:

"It is clear to the [c]ourt that the employee was employed in the same capacity while at [Electric Boat], [National Grid,] and [USGEN]. The employee testified that his employment at [USGEN], the final employer, was the same exact job he did while at [National Grid]. The only difference was the name of the employer. As such, under the rule established in *Tavares* [*v. A.C. & S. Inc.*, 462 A.2d 977 (R.I.1983) ], the [c]ourt finds that [USGEN] is liable because it was the final employer and the employment was of the same nature and type in which the disease was first contracted."

The trial judge entered decrees against USGEN and in favor of the petitioners,

6. Mr. Gallagher also filed a petition against USGEN seeking compensation for loss of use and permanent scarring of the torso; however, this petition is not before us on appeal.

7. Mr. Gallagher later filed a separate petition to enforce the pretrial order against USGEN, in which he requested a 20 percent penalty on the compensation benefits that were due and owing to him. This petition was granted, but is not before us on appeal.

8. It is our understanding that after her husband died, Mrs. Gallagher also took over the prosecution of his petitions. Under G.L.1956 § 28–35–56, in the event of the death of a

petitioner, workers' compensation proceedings may be prosecuted by the employee's legal representative or by any person entitled to compensation by reason of the employee's death.

9. For ease of reference, we use the term "petitioners" to refer to Mrs. Gallagher on behalf of herself and Mr. Gallagher.

10. Doctor Teiger's deposition is not part of the record that was sent to this Court.

11. As the trial judge noted, this "essentially [is] a fight between the carrier-employers."

and USGEN appealed. The trial judge also entered decrees against the petitioners and in favor of National Grid and Electric Boat, and the petitioners appealed.[12]

The Appellate Division vacated the trial judge's decrees that held USGEN liable, and it entered final decrees assessing liability against National Grid instead. Mrs. Gallagher petitioned this Court for a writ of certiorari to review the final decrees vacating the trial judge's adjudication of liability against USGEN in case Nos. 2005–4911 and 2004–4966, and National Grid petitioned for a writ of certiorari to review the final decrees in favor of the petitioners in case Nos. 2004–4053 and 2005–5178.[13] On April 26, 2011, we issued both writs, and we consolidated the cases on November 16, 2011.[14]

## II

### Standard of Review

■■■ "Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to G.L.1956 § 28–35–30." *McGloin v. Trammellcrow Services, Inc.*, 987 A.2d 881, 885 (R.I.2010) (quoting *Mumma v. Cumberland Farms, Inc.*, 965 A.2d 437, 441 (R.I.2009)). Our review "is limited to examining the record to determine if an error of law has been committed." *Id.* (quoting *Matter of Falstaff Brewing Corp. re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994)). "We do not 'weigh the evidence, but rather review[ ] the rec-

ord to determine whether legally competent evidence supports the findings of * * * the Appellate Division.'" *Id.* (quoting *Poudrier v. Brown University*, 763 A.2d 632, 635 (R.I.2000)). "This Court will, however, conduct a *de novo* review if a question of law or a mixed question of fact and law is in issue." *Impulse Packaging, Inc. v. Sicajan*, 869 A.2d 593, 598 (R.I.2005).

## III

### Discussion

In support of its petition for certiorari, National Grid argues that the Appellate Division erred in overturning the trial judge's findings of fact because the trial judge did not overlook or misconceive the evidence and was not clearly wrong. According to National Grid, "[t]here is no doubt that the employee's work [at USGEN] for the duration of approximately six years was of the same nature and type" as the work in which the occupational disease was contracted, "since the employee testified that he did the exact same work in the exact same place."

Mrs. Gallagher, in support of her own petition for certiorari, makes arguments similar to National Grid's. Mrs. Gallagher also points out that the trial judge's findings were supported by Mr. Gallagher's "unrefuted testimony" that "there was still asbestos in the workplace at USGEN." She further asserts that "[t]he Appellate Division misinterpreted the law by requiring [Mr.] Gallagher to be exposed to asbes-

---

**12.** Apparently, the petitioners appealed as a precaution, in the event that the Appellate Division overturned the decrees against US-GEN.

**13.** The decrees in favor of Electric Boat, which were affirmed by the Appellate Division, were not appealed.

**14.** Prior to this Court issuing the writs, in March 2011, Mrs. Gallagher and National Grid each moved to stay the final decrees that were the subjects of their respective certiorari petitions. This Court denied Mrs. Gallagher's motion and granted National Grid's motion only as to those portions of the decrees that ordered any reimbursement by National Grid to USGEN.

tos at USGEN as a condition precedent to his success against USGEN."

National Grid additionally argues, citing Rule 602 of the Rhode Island Rules of Evidence, that "the Appellate Division abused its discretion in somehow concluding that [Mr. Gallagher] could not actually have observed or perceived that which he testified to." National Grid asserts that Mr. Gallagher's "uncontradicted, positive testimony" should not have been disregarded by the Appellate Division because "[n]othing in Rule 602 requires the witness to be positive or absolutely certain about his testimony."

USGEN responds that "the Appellate Division acted within its authority in finding that the trial [judge] had misapplied this Court's standard in *Tavares* * * * and [that he] was clearly erroneous in finding that Mr. Gallagher's work for USGEN was of the same nature and type in which his occupational disease was first contracted." USGEN argues that the trial judge's "finding that Mr. Gallagher remained a welder and worked in the same physical location is simply too narrow an interpretation of [the] nature and type of employment to support the Gallaghers' burden of proof." It further asserts that Mr. Gallagher's testimony about asbestos at USGEN was "speculative in nature" and "not probative on the pertinent issues regarding the nature and conditions of his employment as it related to his occupational disease." Mrs. Gallagher makes similar, yet self-contradictory, arguments in her response to National Grid, further asserting that this Court has no jurisdiction to review the factual determinations made by the Appellate Division.

It is not disputed that Mr. Gallagher's malignant mesothelioma is an occupational disease. *See* § 28–34–1(3) and § 28–34–2(32). An employee suffering from an occupational disease is entitled to recover compensation "from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted." Section 28–34–8. That employer then may petition the Workers' Compensation Court for apportionment of liability among other employers that also may be responsible for the employee's occupational disease. *See id.*

In *Tavares*, this Court considered the "last employer" provision of § 28–34–8, holding as follows:

> "[I]n cases * * * involving disability because of occupational diseases incurred while working for multiple employers, 'the last employer is liable either if (a) the employee's work with the last employer caused an aggravation of the prior condition or (b) the last employment (no matter how brief) was of the same nature and type in which the disease was first contracted, regardless of whether the last employment aggravated the prior condition.'" *Tavares*, 462 A.2d at 979 (quoting *Hudson v. Jackson Plating Co.*, [105 Mich.App. 572] 307 N.W.2d 96, 98 (Mich.Ct.App.1981)).

We also stated in *Tavares* that in occupational-disease cases, "the proof required is that the employee must submit evidence of the nature and conditions of his employment and that these conditions be of a nature that is likely to cause the disease." *Id.* at 980.

Before embarking upon our limited review of the Appellate Division's final decrees and accompanying decision, we note that the Appellate Division's review of a trial judge's findings also is limited: § 28–35–28(b) states that "[t]he findings of the trial judge on factual matters shall be final unless an appellate panel finds them to be clearly erroneous." We previously have underscored, however, that if the Appellate Division does make a finding of clear

error, it then is "free to review the evidence *de novo* and make its own factual findings and conclusions * * *." *Bechtel Corp. v. Ponte*, 762 A.2d 456, 460 (R.I. 2000).

In the case at hand, the Appellate Division reviewed the evidence on the record before it—specifically, the testimonies of Mr. Gallagher, Dr. Pella, and Dr. Teiger—and set forth the correct standard of review. It then found clear error on the part of the trial judge and noted this finding on the record. Specifically, the Appellate Division stated that the trial judge erred because Mr. Gallagher's "testimony as to the presence of asbestos after the 1995 repowering of the plant was mere speculation, and thus was not probative as to the type or nature of the conditions he worked in while with USGEN." Given this finding, the Appellate Division was free to conduct a *de novo* review of the evidence.

In conducting such review, the Appellate Division found that "[i]n contrast to the unequivocal nature of the employee's testimony regarding his exposure to asbestos while working for Electric Boat and [National Grid], his testimony regarding his time with USGEN was entirely speculative." The Appellate Division remarked that Mr. Gallagher used "speculative" phrases such as "[t]here might be [asbestos] sitting around," "I can almost guarantee it," "I bet you still find some," "I put dollars to donuts that there's still asbestos in some areas," and "I wouldn't doubt that there's still some" while being questioned about the presence of asbestos during his employment with USGEN. The Appellate Division also noted the trial judge's emphasis on "the fact that the employee was a welder throughout his twenty (20) year career at the plant, despite changes in ownership," but reasoned that Mr. Gallagher "did not contract mesothelioma be-

cause he was a welder; he contracted mesothelioma because the conditions in which he was welding exposed him to asbestos." Ultimately, the Appellate Division determined that Mr. Gallagher's testimony was "not probative on the issue of whether the conditions while working for USGEN were of the same type or nature in which he first contracted the disease." The Appellate Division also found that Mr. Gallagher had not proven that his employment with USGEN aggravated his occupational disease.

■ Based upon our review of the record, we are satisfied that there is ample evidence to support the findings of the Appellate Division. Mr. Gallagher testified unequivocally about the presence of asbestos during his time at Electric Boat and at National Grid. He testified that, while at Electric Boat, his workplace was "loaded" with asbestos, that asbestos was "airborne," and that he used asbestos gloves and blankets to do his welding work. Mr. Gallagher similarly testified that, while working for National Grid, he often saw asbestos "floating in the air," and he described the annual "overhauls" that took place, when asbestos would be stripped from the pipes and put into bags or mixed and reused.

Mr. Gallagher's testimony about his working conditions at USGEN, however, was much more equivocal. He first testified that when the plant—then still owned by National Grid—was repowered in 1995, "whatever asbestos was there" was "capped off," and "everything else" was "stripped" and "recoated * * * with new insulation." However, when asked whether he was exposed to asbestos after USGEN acquired the plant, Mr. Gallagher stated: "There's still old parts in the plant. There might be some sitting around on beams and stuff that we do have to go into now and then. So I would say, yeah,

there's a lot less, but there is still some." Also, when asked whether asbestos was "worked at all and put into the air" during this time, Mr. Gallagher answered "I would say yeah." The rest of Mr. Gallagher's testimony consisted of ambiguous statements such as "I can almost guarantee [that] * * * you [can] still find some [asbestos]"; "I put dollars to donuts that there's still asbestos in some areas"; and "I wouldn't doubt that there's still some."

In light of the speculative nature of Mr. Gallagher's testimony, it is our opinion that the Appellate Division did not err in finding that the trial justice misconceived the relevant evidence at issue. We agree with the Appellate Division that Mr. Gallagher's testimony with respect to USGEN was "mere speculation" and "not probative on the issue of whether the conditions while working for USGEN were of the same type or nature in which he first contracted the disease." The Appellate Division's findings were well within its discretion on *de novo* review, and we decline to disturb them on appeal.

Mrs. Gallagher and National Grid both argue that exposure to asbestos is not "a condition precedent" to finding liability against USGEN, and that the fact that Mr. Gallagher worked as a welder at USGEN, just as he had at Electric Boat and National Grid, is enough to hold USGEN liable. Such an argument, however, misconceives our holding in *Tavares*, 462 A.2d at 979, in which we explained that to prove that the last employment "was of the same nature and type in which the disease was first contracted," the employee "must submit evidence of the nature and conditions of his employment," which conditions must "be of a *nature* that is *likely to cause the disease.*" *Id.* at 980 (emphases added). Clearly, the significant issue in occupational disease cases is not an employee's job title; rather, it is whether the employee

was exposed to conditions that were "likely to cause the disease." *Id.* In the case at hand, as the Appellate Division pointed out, Mr. Gallagher "did not contract mesothelioma because he was a welder; he contracted mesothelioma because the conditions in which he was welding exposed him to asbestos." Because the Appellate Division's interpretation of *Tavares* was correct, we find Mrs. Gallagher's and National Grid's argument to the contrary unavailing.

Finally, National Grid, citing Rule 602, argues that "the Appellate Division abused its discretion in somehow concluding that [Mr. Gallagher] could not actually have observed or perceived that which he testified to." Rule 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In the present case, however, the Appellate Division did not find that Mr. Gallagher's testimony with respect to USGEN was inadmissible; rather, it found Mr. Gallagher's testimony to be speculative and not probative "on the issue of whether the conditions while working for USGEN were of the same type or nature in which he first contracted the disease." As such, National Grid's Rule 602 argument is misplaced.

After reviewing the Appellate Division's final decrees and accompanying decision, we hold that the Appellate Division did not err in vacating the trial judge's decrees and in entering final decrees assessing liability against National Grid instead.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the final decrees of the Appellate Division. The papers in the case shall be remanded to the Workers' Compensa-

tion Court with our decision endorsed thereon.