July 1, 2020

Philip L. Thompson, Jr.             :

              v.                     :

Millard Wire Company.               :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Philip L. Thompson, Jr.                          :

v.                                               :

Millard Wire Company.                            :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The petitioner, Philip L. Thompson, Jr., petitioned this

Court for a writ of certiorari to review a December 4, 2017 final decree of the Appellate Division

of the Workers' Compensation Court.  That December 4, 2017 final decree denied his appeal and

affirmed the December 24, 2015 decree of the trial judge.  The trial judge found, following a trial,

that Mr. Thompson had "failed to prove that he sustained an injury to his neck arising out of and

in the course of his employment on April 11, 2013."  This Court granted Mr. Thompson's petition

on February 26, 2019 and issued a writ of certiorari.  Mr. Thompson argues before this Court that

the Appellate Division erred in affirming the trial judge because the trial judge committed

reversible error by: (1) stating that Thomas Rocco, M.D. was not qualified to opine on an

orthopedic issue because he was a board certified general surgeon, not a board certified orthopedic

surgeon; and (2) finding Dr. Rocco's testimony to be inconsistent.

This case came before the Supreme Court for oral argument pursuant to an order directing

the parties to show cause why the issues raised in this case should not be summarily decided.[1]

---

[1]     This case was heard remotely using the WebEx platform.

- 1 -

After considering the written and oral submissions of the parties, and after a thorough review of the record, we are of the opinion that cause has not been shown and that the case may be resolved at this time without further briefing or argument.

For the reasons set forth in this opinion, we affirm the final decree of the Appellate Division of the Workers' Compensation Court.

## I

## Facts and Travel

On August 15, 2014, Mr. Thompson filed a petition with the Workers' Compensation Court seeking workers' compensation benefits for injuries to his neck, right shoulder, and right arm, purportedly sustained while in the employ of the respondent, Millard Wire Company (Millard), on April 11, 2013. His description of how the injury occurred stated that he "was holding down a metal strip[,] while [he] was pushing it[,] [he] felt a pain in [his] right shoulder and neck."

The parties later stipulated to all of the findings in a September 9, 2014 pretrial order signed by the trial judge, which order was entered as an exhibit at trial. The order stated that Mr. Thompson was injured while in the employ of Millard on April 11, 2013. He sustained an injury described as right "rotator cuff tendonitis" which "[arose] out of and in the course of employment * * *." His period of incapacity was listed as September 17, 2013 until September 25, 2013. The parties further stipulated to Mr. Thompson's average weekly wage, and the pretrial order reflects the fact that his petition for workers' compensation benefits for that injury was granted.

Thus, after the entry of the pretrial order, the only issue which remained before the trial judge was whether or not, in addition to his right rotator cuff injury, Mr. Thompson also sustained

an injury to his neck arising out of the April 11, 2013 incident in the workplace. The controversy concerning Mr. Thompson's neck injury is, likewise, the only issue before this Court.

On September 9, 2014, Mr. Thompson filed a claim for trial with respect to his neck injury. We relate below the salient aspects of the testimony and evidence presented at the trial.

## A

## Mr. Thompson's Testimony at Trial

Mr. Thompson testified that he "felt fine" with respect to his neck and shoulder prior to April 11, 2013. He added that, on that date, he was engaging in "heavy duty slitting," which "requires a lot of pulling, and lifting, and pushing * * *." He further testified that "normally there is a piece of equipment that holds this matter onto the machine, but they never installed it on this particular machine" and that, therefore, he "had to hold this spring onto the machine in order to tape it and strap them * * * maybe, 50 or 60 times during the course of the day * * *." He further testified that, at one point, he "felt like a pull or a, it was more like a sting" and that his right arm "felt like it was going to fall off." He then stated that he suffered pain in his shoulder, arm, and "the side of [his] head." He added that he felt "pressure" in his neck.

Mr. Thompson testified that he went to see Scott Wilson, M.D., his "primary physician." He stated that he then saw Joseph Lifrak, M.D. It was further his testimony that he saw Dr. Thomas Rocco for the first time in September of 2013. He added that, at the time of trial, he remained under Dr. Rocco's care and received steroid injections in his neck.

On cross-examination, Mr. Thompson testified that he did not remember Dr. Wilson ever telling him that he had osteoarthritis in his neck.

Although Mr. Thompson was the only witness who testified at trial, affidavits, medical records, and deposition testimony from Dr. Lifrak and Dr. Rocco were entered as exhibits. Some

of Mr. Thompson's medical records from his treatment over prior years by Dr. Wilson were also before the trial judge.

**B**

**Dr. Joseph Lifrak's Deposition Testimony**

Doctor Joseph Lifrak testified as an expert witness. He testified that he was board certified in orthopedic surgery. It was further his testimony that he first saw Mr. Thompson on June 21, 2013. He stated that, when taking a medical history from Mr. Thompson, Mr. Thompson told him that "over the past two weeks prior to [the appointment] * * * he started getting pain into his neck * * *." Doctor Lifrak testified that his diagnosis, following his assessment of Mr. Thompson, was "right rotator cuff tendonitis and possible radiculitis of the upper extremity." He added that the shoulder injuries with which Mr. Thompson presented were the result of his April 11, 2013 injury at work.

With respect to Mr. Thompson's complaints about his neck, Dr. Lifrak testified that, in his opinion, to a reasonable degree of medical certainty, the "neck symptoms and radiculitis which started two weeks prior to [Dr. Lifrak] seeing [Mr. Thompson] w[ere] not the result of the work related incident." He further explained his reasoning as follows:

> "* * *[The pain from a certain injury] doesn't have to be instantaneous like dropping something on your foot, but you know within a day or two that hey, there's something not right here. Certainly not six weeks later.
> "So can someone have neck pain six weeks later? Sure. Is that related to something that happened six weeks earlier? No. * * * Who knows why the neck pain started, but it certainly wasn't from that thing that happened on April 11, 2013."

Doctor Lifrak was then presented with some of Mr. Thompson's medical records from Dr. Wilson's office. Specifically, he reviewed the records for September 8, 2011 and testified that those records indicated that Mr. Thompson saw Dr. Wilson for complaints of neck and back pain;

Dr. Lifrak added that the records included osteoarthritis of the neck in the medical history. Doctor Lifrak was further shown records from Dr. Wilson's nurse practitioner, Jessica Koval, with respect to Mr. Thompson's appointment on April 17, 2013, and he testified that he did not see any mention of neck pain referenced in those records. He added that those records "basically confirm[ed] what the patient told [him], that, in fact, he hurt his shoulder and that he didn't have neck pain initially, and the neck pain started in the middle of May sometime."

When asked if it was correct that, "once you address the more painful pathology, then another one pops up which was masked by the more painful symptom;" he responded as follows: "The phenomenon you are talking about, it does exist. The typical timeframe for that is usually about a 48 to 72-hour period." He further testified that the last time he saw Mr. Thompson was on September 4, 2013.

Finally, Dr. Lifrak was asked to look at records of Mr. Thompson's September 24, 2013 appointment with Jessica Madison, a nurse practitioner employed by Dr. Rocco's practice, and he testified that her findings with respect to the workplace injury being the cause of Mr. Thompson's neck injury varied from his own because the medical history on which she was relying was "wrong."

## C

### Dr. Thomas Rocco's Deposition Testimony

Doctor Thomas Rocco also testified as an expert witness. He testified that he was board certified in general surgery. It was his testimony that he saw Mr. Thompson initially on October 18, 2013, but he noted that Mr. Thompson was originally seen at Dr. Rocco's practice on September 24, 2013 by a nurse practitioner (Jessica Madison). He added that the nurse practitioner took a medical history and that he "evaluated" the history. It was his testimony that the medical

history taken by the nurse practitioner mentioned that Mr. Thompson had neck pain which had been present since April 11, 2013. He added that he concurred with the diagnosis of the nurse practitioner that Mr. Thompson suffered from "cervical degenerative disk disease."

When asked about his opinion as to whether or not the diagnosis was related to the workplace injury, he testified that, in his opinion, to a reasonable degree of medical certainty, "his action at work and his MRI findings, that it seems -- that it is associated with his symptoms that I was treating him for."

During the course of his deposition testimony, Dr. Rocco was given a copy of Mr. Thompson's medical records from Dr. Lifrak's office to review. He testified that they did not cause him to change his opinion. But, when asked "[s]o with an understanding of a history of complaints in Mr. Thompson's neck starting prior to his examination [with Dr. Lifrak] in the first week of June 2013, would that change your opinion at all regarding whether or not the April 11, 2013 incident was the cause of Mr. Thompson's neck complaints?" Dr. Rocco responded: "It could change my opinion." Doctor Rocco's testimony proceeded as follows:

> "Q. Doctor, based on that history in Dr. Lifrak's report, would you agree that approximately a two-month delay between the onset of symptoms in his neck and the work-related incident on April 11, 2013 would suggest that the neck complaints are most likely not related to that work incident on April 11, 2013?
>
> "* * *
>
> "A. This could change my opinion in regard to the neck symptoms and his work-related injury * * *.
>
> "* * *
>
> "Q. [I]f Mr. Thompson had a prior history of complaints or symptoms at C5-6 and C6-7, is it possible that could change your opinion as to the cause of the objective findings in connection or as it relates to an alleged work injury of April 11, 2013?

"* * *

"A. Looking at these records and this history, my feeling is, he had cervical degenerative disk disease, he was having symptoms before the day of the date of injury, so I think it may not have caused the cervical degenerative disk disease and foraminal narrowing, but it most likely aggravated his symptoms."

Despite the just-quoted testimony, Dr. Rocco proceeded to answer in the affirmative when asked, "So if there were a two-month gap between the April 11, 2013 incident and the report upon the onset of neck complaints, would that suggest the neck aggravation was not -- there was no aggravation on April 11, 2013?" It was further his testimony that "[i]f [Mr. Thompson] stated that the first time he had neck and arm pain was two months after April 11, then my opinion is that the work injury date is not related to his symptoms of his arm and his neck."

After then reviewing the records from Dr. Wilson's office, Dr. Rocco testified that the medical history contained therein, as well as Dr. Lifrak's records, "could change" his opinion with respect to the cause of Mr. Thompson's symptoms from degenerative disk disease and foraminal narrowing. He testified, with respect to Mr. Thompson's degenerative disk disease, as follows:

"It could have been there before, and most likely was there before, because it was notated in Dr. Wilson's chart about an issue at the same levels that we're treating here in the cervical spine. But I think it was aggravated because our treatment here actually helped him for periods of time, and then it got reaggravated while he was back at work."

Despite that testimony, Dr. Rocco followed up by stating, "By our assessment at this practice, we believe that the injury on April 11, 2013 caused his neck pain and his right arm pain."

Doctor Rocco later answered in the affirmative when asked, "Is your opinion essentially that Mr. Thompson has a bad back to begin with, he has a job, and the job in general, but no specific date, causes him to have trouble with that back?"

- 7 -

# D

## The Decision of the Trial Judge

The trial judge issued a written decision on December 17, 2015. She began by detailing the facts at issue. She specifically detailed the deposition testimony and medical record evidence from Dr. Lifrak. Then she detailed the deposition testimony and medical record evidence from Dr. Rocco. She further looked at the report of Jessica Koval, the nurse practitioner in Dr. Wilson's office, and the report of Jessica Madison, the nurse practitioner in Dr. Rocco's office.

The trial judge then stated that "[t]he only issue before the Court is whether the employee's neck complaints are causally related to the injury at work." She concluded that the employee had "failed to meet his burden of proof in this matter."

She found that Dr. Lifrak testified "consistently" that the neck complaints were not related to the work injury and that he based his opinion on the medical history provided to him. The trial judge also noted that the medical history in Jessica Koval's report was consistent with the medical history provided to Dr. Lifrak. By contrast, she found Dr. Rocco's testimony to be inconsistent. She stated as follows:

> "The Court first notes that Dr. Rocco is not an orthopedic surgeon. He is a Board certified general surgeon. Therefore, Dr. Rocco is certainly not qualified to opine on an orthopedic issue. Secondly, Dr. Rocco gave inconsistent opinions. During his deposition, Dr. Rocco at times agreed that the employee's neck complaints are not causally related to the incident at work. At other times he testified that the neck complaints were causally related to work."

For those reasons, the trial judge accepted the opinion of Dr. Lifrak over that of Dr. Rocco.

A decree entered on December 24, 2015 reflecting the trial judge's December 17, 2015 decision. Mr. Thompson appealed to the Appellate Division of the Workers' Compensation Court. The Appellate Division issued a written decision on November 27, 2017 (discussed in more detail

*infra*) followed by a final decree on December 4, 2017, affirming the trial judge and denying and dismissing Mr. Thompson's appeal. Mr. Thompson petitioned this Court for issuance of a writ of certiorari, which was granted on February 26, 2019.

## II

## Standard of Review

"Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to G.L. 1956 § 28-35-30." *Gallagher v. National Grid USA/Narragansett Electric*, 44 A.3d 743, 748 (R.I. 2012) (internal quotation marks omitted). Our review in this context "is limited to examining the record to determine if an error of law has been committed." *Id.* (internal quotation marks omitted). Importantly, this Court does not "weigh the evidence, but rather [we] review [ ] the record to determine whether legally competent evidence supports the findings of * * * the Appellate Division." *McGloin v. Trammellcrow Services, Inc.*, 987 A.2d 881, 885 (R.I. 2010) (internal quotation marks omitted). "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *Ajax Construction, Inc. v. Liberty Mutual Insurance Company*, 154 A.3d 913, 921 (R.I. 2017) (internal quotation marks omitted). However, we do "conduct a *de novo* review if a question of law or a mixed question of fact and law is in issue." *Gallagher*, 44 A.3d at 748 (internal quotation marks omitted).

## III

## Analysis

## A

## The Decision of the Appellate Division

In reviewing the decision of the trial judge, the Appellate Division began by discussing, at length, the testimony of Mr. Thompson, the deposition testimony of Dr. Lifrak, the deposition testimony of Dr. Rocco, and the medical records of those doctors, as well as Dr. Wilson.

The Appellate Division noted that Mr. Thompson was alleging on appeal that the trial judge erred in finding Dr. Rocco's testimony to be inconsistent and that she erred as well in finding Dr. Rocco not to be qualified because he was a board certified general surgeon, not a board certified orthopedic surgeon.

The Appellate Division began by addressing the first basis for Mr. Thompson's appeal. It ultimately concluded that the "findings of fact made by the trial judge [were] not clearly erroneous * * *." It found that the trial judge had rejected the opinion of Dr. Rocco because it was based on an inaccurate medical history. In support of that conclusion, it examined the April 17, 2013 notes of the nurse practitioner in Dr. Wilson's office which showed no complaints of neck pain. It further noted the history of neck osteoarthritis apparent from Dr. Wilson's records and the testimony of Dr. Lifrak with respect to the medical history given to him. It then noted that it was "evident from [Dr. Rocco's] testimony that the differing histories regarding the onset of the employee's neck symptoms would affect his opinion as to the cause of the neck complaints." The Appellate Division stated that the trial judge had found Dr. Lifrak to be more persuasive because there was more evidentiary support for his opinion as to causation.

Moving on to the second basis for Mr. Thompson's appeal, the Appellate Division noted that the fact that Dr. Rocco was not a specialist in an orthopedic field might bear on the weight given to his testimony by the trial judge but should not affect the admissibility of the testimony. It concluded that the trial judge "misspoke" in her decision when she stated that Dr. Rocco was not qualified. But, the Appellate Division went on to reason that Dr. Rocco's lack of board certification in orthopedic surgery was not "the sole reason for her rejection of his opinion that the employee's neck injury was caused by the incident on April 11, 2013." It stated that the trial judge also looked to the differing medical histories given to each doctor and chose to rely on the medical history given to Dr. Lifrak. Therefore, it concluded that the trial judge's misstatement was harmless error.

Accordingly, the Appellate Division denied and dismissed Mr. Thompson's appeal.

**B**

**Discussion**

On certiorari, Mr. Thompson primarily contends that the Appellate Division erred in affirming the trial judge because the trial judge erred as a matter of law when she stated that Dr. Rocco was not qualified because he was not a board certified orthopedic surgeon. He further avers that the Appellate Division erred in affirming the trial judge on the basis of the purported inconsistencies she found in Dr. Rocco's testimony.

In addressing Mr. Thompson's first argument on certiorari, we feel compelled to unequivocally state at the outset that, as the Appellate Division recognized, the trial judge erred when she stated that Dr. Rocco was not qualified to testify because he was not board certified as an orthopedic surgeon. Rule 702 of the Rhode Island Rules of Evidence deals with testimony by experts and states that "a witness qualified as an expert by knowledge, skill, experience, training,

- 11 -

or education, may testify thereto in the form of fact or opinion." It is clear from a review of Dr. Rocco's deposition testimony that he was clearly qualified as an expert witness based on his experience with spinal injuries. It matters not, for the purpose of the admissibility of his testimony, that he was board certified in general surgery as opposed to orthopedic surgery.

Indeed, in a case remarkably similar to that with which we are currently confronted, we held that "[t]he fact that [the doctor in question was] not a specialist in the orthopedic field might bear upon the weight given to his testimony, but does not affect the admissibility of his testimony." *Leahey v. State*, 121 R.I. 200, 202, 397 A.2d 509, 510 (1979); *see also State v. D'Alessio*, 848 A.2d 1118, 1123, 1124 (R.I. 2004) (stating that "Rule 702 does not require that a proffered expert have a formal certification or specialization in a particular field" and holding that the fact that the doctor at issue "was not a specialist in neuropathology might bear on the weight of her testimony, but not its admissibility"). Doctor Rocco was certainly qualified to render his expert opinion in this case, and it was then within the discretion of the trial judge to assess the effect of his area of specialization on the weight to be given to his testimony. Thus, it was error on the part of the trial judge to state that Dr. Rocco was not *qualified* because he was not board certified in orthopedic surgery.[2]

That being said, we note that the trial judge in this case did not preclude Dr. Rocco's testimony from coming in. Indeed, his deposition was admitted as an exhibit, and the trial judge discussed it in detail in her written opinion. It is clear from her decision that she considered his

---

[2]     We note that Mr. Thompson relies heavily in his argument before this Court on certiorari on this Court's opinion in *Marshall v. Medical Associates of Rhode Island, Inc.*, 677 A.2d 425 (R.I. 1996). While we espouse a similar principle in our opinion today, we note (as did the Appellate Division) that *Marshall* is not directly on point with respect to the instant case. In *Marshall*, this Court was tasked with interpreting G.L. 1956 § 9-19-41, which deals specifically with medical malpractice cases. *Marshall*, 677 A.2d at 426. Additionally, the expert witness in that case was barred altogether from testifying by the trial justice. *Id.*

opinion. However, more to the point, this Court is not being asked to review the decision of the trial judge; rather, we are confronted with review on certiorari of the decision of the Appellate Division upholding the trial judge's decision. *See Gallagher*, 44 A.3d at 748. The Appellate Division found that the trial judge based her decision to discount Dr. Rocco's testimony on more than her erroneous statement with respect to Dr. Rocco being qualified as an expert witness. Additionally, the Appellate Division itself reviewed at length the testimony of Dr. Rocco and gave substantive consideration to it in assessing the appeal before it. As such, we cannot perceive any error of law on the part of the Appellate Division.

We turn next to Mr. Thompson's second contention on certiorari—namely, that the Appellate Division erred in affirming the decree of the trial judge on the basis of the supposed inconsistencies which she found in Dr. Rocco's testimony. Doctor Rocco testified to his belief that Mr. Thompson's neck problems were caused by the April 11, 2013 workplace injury. However, he admittedly based that opinion on the medical history obtained from Mr. Thompson which represented that Mr. Thompson had had neck symptoms since April 11, 2013. What is more, when confronted with the medical records from the offices of Dr. Lifrak and Dr. Wilson, Dr. Rocco freely admitted that they could change his conclusion; and he agreed that, if the neck symptoms did not manifest until nearly two months after the injury, the injury may not have aggravated any existing neck problems.

The Appellate Division also noted that the records from Mr. Thompson's April 17, 2013 appointment in Dr. Wilson's office reflected no mention of neck pain; it further stated that the records from Dr. Wilson's office showed Mr. Thompson had a history of osteoarthritis in his neck. The Appellate Division then proceeded to conclude that those records lent credence to the medical history relied on by Dr. Lifrak, rather than to the medical history relied on by Dr. Rocco. The

- 13 -

Appellate Division then noted that the trial judge found the opinion of Dr. Lifrak more persuasive for the same reason. It concluded that the trial judge had "discretion to rely upon the opinion of one physician over another;" and it cited to *Parenteau v. Zimmerman Engineering, Inc.*, 111 R.I. 68, 78, 299 A.2d 168, 174 (1973), in support of that principle. It further concluded that the trial judge was not clearly wrong in relying on Dr. Lifrak's opinion.

As such, our review of the record and the decision of the Appellate Division indicates that there was certainly legally competent evidence to support the conclusion of the Appellate Division that Dr. Rocco's testimony was inconsistent and that the trial judge did not err in finding the opinion of Dr. Lifrak to be more persuasive; in view of those determinations, settled principles of law require this Court to affirm the finding of the Appellate Division. *See Ajax Construction*, 154 A.3d at 921.

Accordingly, after a thorough review of the decision of the Appellate Division, the contentions of the parties on certiorari, and the record, we are unable to perceive any reversible error on the part of the Appellate Division in this case.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the final decree of the Appellate Division of the Workers' Compensation Court. The record may be remanded to that tribunal with our decision endorsed thereon.

Justice Indeglia participated in the decision but retired before its publication.

- 14 -



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Philip L. Thompson, Jr. v. Millard Wire Company. |
| **Case Number** | No. 2018-4-M.P. <br> (14-4881) |
| **Date Opinion Filed** | July 1, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Appellate Division of the Workers' Compensation Court |
| **Judicial Officer from Lower Court** | Associate Judge Dianne M. Connor <br> Associate Judge Robert E. Hardman <br> Associate Judge Debra L. Olsson |
| **Attorney(s) on Appeal** | For Petitioner: <br><br> Thomas M. Dickinson, Esq. <br> Stephen J. Dennis, Esq. <br> Howard L. Feldman, Esq. |
| | For Respondent: <br><br> Mark P. McKenney, Esq. |

SU-CMS-02A (revised June 2020)